*229 PER CURIAM.
hThe defendant was found guilty as charged on two counts of second degree murder by a unanimous twelve-person jury and was sentenced to two consecutive life sentences at hard labor, without the benefit of parole, probation, or suspension of sentence. On appeal, the defendant asserted sixteen assignments of error. The appellate court found merit in the defense’s claim that the trial judge failed to properly address two of the defendant’s Batson[1] objections raised during voir dire, and concluded that the prosecution improperly used peremptory challenges to remove these jurors with a racially discriminatory intent. Pretermitting review of the other assignments of error raised on appeal, the court of appeal set aside the defendant’s convictions and sentences and ordered a new trial. State v. Jacobs, 2007-887 (La.App. 5 Cir. 5/12/09), 13 So.3d 677. After our review of the issues raised, we reverse the court of appeal’s determination and remand for its consideration of the other issues raised on appeal.
In his appeal, the defendant claimed his Batson objections raised during voir dire were supported by (1) statistical evidence of racial discrimination, (2) disparate questioning by the prosecutor of black and white jurors, (3) the prosecutor’s failure li>to conduct a meaningful voir dire on matters of alleged concern that formed the basis for his peremptory strikes, and (4) the prosecution’s disparate treatment of white jurors and black jurors with similar conditions. The appellate court found evidence of all four factors claimed by the defense. State v. Jacobs, 2007-887 p. 5 (La.App. 5 Cir. 5/12/09), 13 So.3d 677, 683.
We first address the court of appeal’s determination that the trial judge failed to properly address the Batson objections raised to the prosecution’s use of peremptory challenges to two prospective jurors, Eric Hughes and Leola Florence.

Eric Hughes

As found by the court of appeal, the prosecutor challenged Mr. Hughes based on a “medical condition.” Jacobs, 2007-887 p. 14-16, 13 So.3d at 689-690. As explained in the appellate opinion, the prosecutor learned of this medical condition either from the trial judge himself, or the judge’s staff, as Mr. Hughes had discussed what was apparently a muscular problem with the bailiff and the judge’s secretary. After the prosecutor discussed Mr. Hughes’ desire to be excused from jury duty based on this muscular problem with the judge and defense counsel, and after defense counsel rejected the prosecutor’s request for a joint challenge for cause, the prosecutor exercised a peremptory challenge to backstrike Mr. Hughes from the jury.
The court of appeal found the record devoid of any evidence from Mr. Hughes about his condition and was, thus, unclear how the trial judge was able to assess the plausibility of the prosecutor’s proffered race-neutral explanation for the third step of a Batson analysis. Consequently, the appellate court held the trial court erred in *230 determining that the prosecutor’s explanations for striking Mr. Hughes were convincingly race-neutral. Jacobs, 2007-887 pp. 16, 18, 13 So.3d at 689, 691.
To the contrary, we find the court of appeal missed an important point in its ^analysis. The trial judge could have no qualms about assessing the plausibility of the prosecutor’s explanation because the trial judge and members of his staff were the ones who knew of the prospective juror’s condition in the first place. While the record is devoid of any evidence from Mr. Hughes directly, there is no serious or creditable argument to be made that Mr. Hughes did not approach the judge’s staff with a request to be excused from jury service on the basis of his medical condition. In other words, the defense has never claimed that the trial judge, prosecutor, and court staff were involved in some sort of conspiracy to manufacture a medical condition for Mr. Hughes that would serve as a race-neutral reason for striking him from the jury. The prosecutor did not know anything about Mr. Hughes’ medical condition until the issue was raised by court staff and then explained by the trial judge himself. The condition was plausible because the trial judge knew about the prospective juror’s request before the prosecutor did. The fact that the prosecutor also claimed as a reason for exercising the peremptory challenge his belief that people kept on juries when they did not wish to serve would be more likely to punish the state, this prejudice, if it is a prejudice, is a race-neutral one.
In connection with this peremptory challenge, the appellate court found suspicious the prosecutor’s failure to ask questions of any voir dire panel whether any of its members had a medical condition which would preclude jury service. We find the fact that the prosecutor did not ask any panel, but only reacted when the issue was raised by others, supports the racial neutrality of the explanation rather than serves as evidence of its opposite.
As further support for its finding, the court of appeal found the prosecutor engaged in disparate treatment of a white prospective juror who also had a medical condition. As evidence of this finding the appellate court points out that prospective 14juror Ms. Thibodeaux interrupted the trial judge, prosecutor and defense counsel at a bench conference to state that she was a diabetic, was dizzy, and could not participate in voir dire much longer. The court of appeal found disparate treatment between white and black prospective jurors because the prosecutor did not inquire about Ms. Thibodeaux’s medical condition and ultimately accepted her to serve on the jury.
However, for disparity of treatment to be present, the medical conditions must be truly similar. Not all medical conditions are alike in how the condition may effect a person’s ability to participate in jury service. As any experienced litigator or trial judge would know, a prospective juror who indicates a diabetic condition may be maintained for jury service simply by making available sufficient types of food and reasonable breaks to ensure that appropriate food is consumed. This condition is unlike someone with a muscular problem in their back or neck which would prevent them from sitting or paying attention during jury service. Apparently, the trial judge, prosecutor and defense counsel in this case all recognized that Ms. Thibodeaux did not present a similar medical condition as Mr. Hughes, as neither the prosecutor nor defense counsel asked Ms. Thibodeaux whether her diabetes would interfere with her ability to serve on the jury. Jacobs, 2007-887 p. 17, 13 So.3d at 691. Moreover, Ms. Thibodeaux did not ask to be *231 released from the jury, unlike Mr. Hughes. The court of appeal’s “evidence” of disparate treatment fails because the medical conditions at issue are not truly similar.
Upon close analysis, we find each of the reasons given by the court of appeal for its conclusions that the prosecutor’s proffered explanation for striking Mr. Hughes was implausible, and that the trial judge failed in his duty to assess the implausibility |sof the prosecutor’s stated reasons, are ultimately unsupported.[2] Consequently, we find there was no error in the trial court’s acceptance of the prosecutor’s race-neutral reasons for raising a peremptory challenge to Mr. Hughes.

Leola, Florence

We now turn our analysis to the second prospective juror which the court of appeal found the prosecutor improperly excluded from the jury, Leola Florence. The appellate court found the prosecutor challenged Ms. Florence because she was sleeping during voir dire, she had previously served on a hung jury in a criminal case, and she had received a subpoena in a possible ongoing case in which she may have been the victim. The trial court accepted the prosecutor’s proffered race-neutral reasons without comment and simply denied the defense’s Batson objection. Jacobs, 2007-887 p. 18, 13 So.3d at 692.[3]
The court of appeal found the prosecutor failed to question Ms. Florence further about her jury service and that he treated differently a white prospective juror, Ms. Rood, who had also served on a previous hung jury. The court of appeal recognized, without realizing the significance of the distinction, that Ms. Florence |fivolunteered the information that the jury she previously served on had not known what to do, whereas Ms. Rood, when asked, did not indicate there had been any lack of understanding of the jury’s role in her prior service. Jacobs, 2007-887 p. 19, 13 So.3d at 692. This distinction alone may be enough to explain the prosecutor’s different handling of these two jurors. However, we do not have to base our decision on this distinction alone, as the other two grounds raised by the prosecutor for challenging Ms. Florence additionally support the distinction made.[4]
The appellate court did not address the prosecutor’s other proffered reasons for challenging Ms. Florence, other than to note that the prosecutor did not question Ms. Florence further as to the subpoena *232 she had received, and that the trial judge did not independently assess the plausibility of the prosecutor’s proffered reasons. Jacobs, 2007-887 p. 20, 13 So.3d at 692. However, this Court has previously held that while a cause challenge may not be sustainable without an inquiry into whether the prospective juror’s impartiality is affected, a prosecutor’s peremptory challenge based on the fact that a prospective juror has been a victim of crime is race-neutral. Compare State v. Harris, 2001-2730 p. 12 (La.1/19/05), 892 So.2d 1238, 1261 with State v. Manning, 2003-1982 pp. 40-42 (La.10/19/04), 885 So.2d 1044, 1084-1085.
Finally, with regard to the prosecutor’s proffered reason that Ms. Florence was sleeping during voir dire, the court of appeal concluded:[5]
Under Miller-El[6] and Snyder,[7] as noted above, the trial judge must independently assess the plausibility of the prosecutor’s proffered reasons. Yet again, the trial judge failed to specifically address the 17plausibility of any of the prosecutor’s proffered race-neutral explanations, based on the prosecutor’s credibility and the prospective juror’s demeanor. This failure also constituted reversible error.
Jacobs, 2007-887 p. 20,13 So.3d at 692.
Since the court of appeal opinion was handed down, the United States Supreme Court issued its ruling in Thaler v. Haynes, 559 U.S.-, 130 S.Ct. 1171, — L.Ed.2d - (2010), which provides an important limitation on the Supreme Court’s previous analysis of Batson issues, specifically the Supreme Court’s holding in Snyder. This new case specifically addresses the court of appeal’s conclusion that Snyder requires some sort of articulation by the trial judge on a demeanor-based challenge. As such, a review of Thaler v. Haynes is critical to our analysis of the issue.
Thaler v. Haynes is a per curiam decision in a federal habeas corpus case involving a Texas criminal defendant who was convicted in Texas state court of the murder of a police officer and sentenced to death. In this case, the Supreme Court rejected the argument that Batson, Snyder, or any other decision established a rule that a demeanor-based explanation for a peremptory challenge must be rejected unless the judge personally observed and recalled the relevant aspect of the prospective juror’s demeanor.[8] In explaining its previous reasoning in Snyder, the Supreme Court noted the prosecutor in that case had proffered a demeanor-based explanation and a non-demeanor-based reason. The Supreme Court found the record negated the non-demeanor-based challenge and, “in light of the particular circum *233 stances of the case, we held that the peremptory challenge could not be sustained on the demeanor-based ground, which might not have figured in the trial judge’s unexplained ruling.” Thaler v. Haynes, No. 09-273, 130 S.Ct. at 1174-75. The Supreme Court explained that the “particular circumstances of the case” included the fact that “the peremptory challenge was not exercised until some time after the juror was questioned, [and] the trial judge might not have recalled the juror’s demeanor.” Id. However, the Court maintained that
“[tjhese observations do not suggest that, in the absence of a personal recollection of the juror’s demeanor, the judge could not have accepted the prosecutor’s explanation.” Indeed, Snyder quoted the observation in Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395(1991) (plurality opinion), that the best evidence of the intent of the attorney exercising a strike is often that attorney’s demeanor. See 552 U.S., at 477, 128 S.Ct. 1203.
Id., 130 S.Ct. at 1175 (emphasis added).
In conclusion, the Supreme Court held “that no decision of this Court clearly establishes the categorical rule on which the Court of Appeals appears to have relied,” i.e., that in ruling on a demeanor-based explanation of a peremptory challenge, a trial judge must personally observe and remember the prospective juror’s demean- or as characterized by the prosecutor. Id., 130 S.Ct. at 1175. The Supreme Court, in remanding, cautioned that its ruling did not mandate the rejection of the respondent’s Batson claim with regard to this juror, but directed that the federal appellate court in this federal habeas matter consider whether the Texas courts’ determination may be overcome under the federal habeas standard for reviewing a state court’s resolution of a fact question. Id.
Applying the rule of Thaler v. Haynes to this case, the trial court’s failure to comment on the prosecutor’s demeanor-based reason does not mean the peremptory challenge should automatically be rejected. Even if the trial judge did not observe Ms. Florence sleeping, his ruling on whether the prosecutor raised the challenge due to a purposeful discriminatory intent could have been validly based on the judge’s ^personal observation of the prosecutor’s demeanor. Under the Supreme Court’s further explanation of its Snyder holding in Thaler v. Haynes, this alone would suffice to reject a Batson objection to a peremptory challenge premised on a demeanor-based reason. As found by the court of appeal, the trial judge expressly stated he accepted the state’s race-neutral explanation.
Upon closer analysis, and with the further guidance from the Supreme Court that no categorical rule exists to reject a demeanor-based explanation for a peremptory challenge when the trial judge fails to specifically comment on that explanation, we find each of the reasons given by the court of appeal for its conclusion that the prosecutor’s proffered explanation for striking Ms. Florence was implausible, and that the trial judge failed in his duty to assess the implausibility of the prosecutor’s stated reasons, are ultimately unsupported.

Other prospective jurors

Because the court of appeal ordered a remand for a third trial of this matter, the appellate court also discussed the peremptory strikes of three other prospective jurors, Melanie Auzenne, Ivory Jordan, and Virgie Stevenson. At the outset, the court of appeal acknowledged that these strikes do not rise to the level of a racial taint that could not be purged. However, the appel *234 late court found the strikes “illustrated] the need for the trial judge to perform his pivotal role in evaluating the claims as required by Snyder.” Jacobs, 2007-887 p. 21,13 So.3d at 693.
Our review finds the court of appeal, in its analysis of the claims under Snyder, improperly imposed a requirement on the trial judge to articulate on the record whether the trial judge both observed and remembered the demeanor-based explanations given by the prosecutor as race-neutral reasons for the peremptory challenges. As previously discussed, Thaler v. Haynes rejected such a requirement.
|inThe court of appeal found the prosecutor offered three reasons for striking Ms. Auzenne: (1) she avoided eye contact with the prosecutor and appeared to be unfriendly to the prosecutor or amenable to the prosecutor’s discussion; (2) she was formerly employed at the New Orleans District Attorney’s office, which has been plagued with problems; and (3) the prosecutor was puzzled when Ms. Auzenne spontaneously volunteered she had never been accused of anything. The trial judge stated he also observed Ms. Auzenne’s disinterest, but could not tell whether she responded differently to either party. The court of appeal found the trial judge failed to give his opinion on the prosecutor’s credibility regarding Ms. Auzenne’s body language and failed to comment on Ms. Auzenne’s puzzling remark, thus, abandoning his pivotal role mandated by Snyder. Finally, the court of appeal noted the prosecutor did not ask follow-up questions of this prospective juror regarding her former employment, which the court of appeal found to be suspicious and evidence that the explanation was a sham and a pretext for discrimination. Jacobs, 2007-887 p. 21,13 So.3d at 693-694.
However, the court of appeal also noted a prospective juror’s inattentiveness and body language have been held to be valid race-neutral reasons for exercising a peremptory challenge. Jacobs, 2007-887 p. 21 n. 75, 13 So.3d at 693 n. 75, citing State v. Coleman, 2006-518 (La.11/2/07), 970 So.2d 511, 515. Since Thaler v. Haynes instructs that a trial judge is not required to articulate whether or not the judge observed or remembers the demeanor-based explanation proffered by the prosecutor, as long as the trial judge accepts the prosecutor’s explanation, the court of appeal’s conclusion that this failure automatically invalidates the trial court’s ruling is erroneous. Moreover, the trial judge was present when Ms. Auzenne made her strange comment, basically a non-sequitor, which supplies yet another race-neutral | n reason for the prosecutor’s strike.
As for the prosecutor’s comment about the prospective juror’s previous employment at the New Orleans District Attorney’s office, and in the absence of knowing when the prospective juror worked at that office, which the attorneys and judge would have known, the response was facially race-neutral. Moreover, as found by the court of appeal, nothing in the totality of the voir dire of this prospective juror rose to the level of a Batson violation.
The state proffered four race-neutral reasons for striking Mr. Jordan: (1) he was the only juror wearing shorts on the first day of voir dire; (2) he was employed at a casino and the prosecutor did not believe law-abiding citizens should be involved in some of the things that occur in a casino; (3) he gave the prosecutor a disgusted look when he related he had been a crime victim and there had been a 2-hour delay in the police response; and (4) he had difficulties speaking, which the prosecutor believed could hinder communications with other jurors during deliberations. Jacobs, 2007-887 p. 21-22, 13 So.3d at 694. The trial judge indicated on *235 the record he had observed the disgusted look and the hesitation in speech. The court of appeal found these race-neutral reasons were worthy of credence. Id., 2007-887 p. 22, 13 So.3d at 694. However, because the trial judge did not indicate if he believed the prosecutor’s remark on Mr. Jordan’s attire,[9] the court of appeal found, under its flawed interpretation of Snyder, that the trial judge abandoned his pivotal role regarding this explanation. The Supreme Court’s recent ruling shows the court of appeal’s conclusion as to this demeanor-based reason was incorrect.
In addition, the court of appeal found the failure of the prosecutor to question Mr. Jordan further about his employment was suspicious and was evidence the 1 ^explanation was a sham and a pretext for discrimination. Id. When examined, however, the comment, which indicates a prejudice, is still a race-neutral one. No amount of questioning would have elicited the response that Mr. Jordan did not work at a casino. And the appellate court does not point to any other prospective juror with a similar job who was white whom the prosecutor failed to strike. Prosecutors often have prejudices against having persons with certain jobs on the jury, i.e. teachers, ministers, accountants, etc. Unless the trial judge found the prosecutor’s race-neutral reason masked a racially-discriminatory intent to remove Mr. Jordan from the jury, the trial judge was entitled to find there was no prohibited motive in the prosecutor’s peremptory challenge of this prospective juror. The court of appeal has previously noted that the trial judge expressly stated he accepted the state’s race-neutral explanation as to Mr. Jordan, and additionally indicated there was nothing in the voir dire of this prospective juror as a whole which uncovered a valid Batson violation.
The state proffered the following race-neutral reasons for the peremptory challenge of Ms. Stevenson: (1) she was asleep while sitting in the general venire audience while the first jury panel was questioned, (2) she taught Sunday School, (3) she had two nephews in jail, and (4) she found in favor of a plaintiff in a civil ease. As noted by the court of appeal, Louisiana courts have found that having relatives in jail is a valid race-neutral reason, as well as a prospective juror’s involvement in church activities. Jacobs, 2007-887 p. 22-23,13 So.3d at 694-695.
The court of appeal expressed two concerns with regard to these reasons; i.e. that a white prospective juror active in her church was accepted by the state and the trial judge failed to articulate whether he saw Ms. Stevenson sleeping. As previously discussed, Snyder does not require an articulation by the trial judge that he observed the demeanor-based explanation proffered by the state. If the trial judge accepts the 11sprosecutor’s explanation, based on the prosecutor’s demeanor, the trial judge may find no discriminatory intent. Moreover, the court of appeal also related that the state distinguished the white churchgoer as someone who had also voted guilty in a criminal case, as contrasted with Ms. Stevenson, who, as a juror in a civil trial, voted to award money to the plaintiff. Even more compelling as a distinction, however, is that Ms. Stevenson was observed sleeping during voir dire and the white prospective juror was not. Finally, even with its concerns, the court of appeal found the trial judge expressly accepted the prosecutor’s race-neutral reasons and did not find the questioning of this prospective juror constituted a valid Batson violation.

*236
Disparate questioning

Defense counsel argued on appeal that the prosecutor asked different questions when there were black prospective jurors on the venire panel. To panels with non-white prospective jurors, the defense claimed the prosecutor asked if the panel members knew anyone in jail but did not pose that question to panels with only white prospective jurors. In addition, the defense claimed that only to panels which included non-white prospective jurors did the prosecutor discuss that Jacobs was facing a potential life sentence. Jacobs, 2007-887 p. 13-14, 13 So.3d at 689.
A close reading of the appellate opinion reveals the court of appeal did not make its own finding as to this issue other than to agree with the defense’s contentions. See Jacobs, 2007-887 p. 5, 13 So.3d at 683. In fact, our review of the information provided by the appellate court makes the accuracy of the defense’s argument questionable.
The appellate opinion states that the entire jury venire was comprised of 48 people and explains the make-up of the first three panels. The first panel consisted of 15 people-14 who were white and one who was Hispanic. The second panel | ^consisted of 14 people-9 who were white and 5 who were black. The third panel consisted of 13 people-11 who were white and two who were black. Consequently, these first three panels all contained nonwhite prospective jurors and 42 of the entire 48 people in the venire were questioned. Voir dire continued with the remaining six venire members. Considering the racial make-up of the entire voir dire, the last panel would have consisted of only white prospective jurors. Taking into account that voir dire was almost completed, that only a few jury members, or alternates, needed to be selected, and that these remaining venirepersons sat through the questioning of the prior three panels, the fact that the prosecutor may have compressed his questioning near the end of voir dire is far different than if disparate questioning occurred between the first and second panels, had there been all white prospective jurors in one and non-white prospective jurors in the other. When examined, the factor of disparate questioning loses the significance given to it by the court of appeal.

Statistical argument

The appellate court found the state used seven of the eight peremptory challenges exercised to remove non-white prospective jurors.[10] From a purely statistical perspective, the court of appeal found the state used 87% of its peremptory strikes to challenge non-white prospective jurors, in a venire where non-white prospective jurors comprised less than 19% of the prospective jurors. Jacobs, 2007-887 p. 13, 13 So.3d at 688. The appellate court, with reference to Miller-El, “f[ound] it unlikely that the disparity in the present case was pure chance.” Id.
From a purely statistical standpoint, we would agree. However, we have more than a bare statistical viewpoint to gauge the appropriateness of the peremptory | ^challenges in this case. For three of those peremptory challenges, the appellate court found there was no valid Batson claim that would invalidate the strike, i.e. for Melanie Auzenne, Ivory Jordan, and Virgie Stevenson. As previously discussed, our review of the two peremptory challenges which the court of appeal deter *237 mined were motivated by a racially-discriminatory intent cannot be supported as such. Consequently, we have found that, after a comprehensive review of these issues, five of the seven state peremptory challenges of non-white prospective jurors did not evince a racially-discriminatory intent. Thus, the statistical argument fails to have merit upon further inquiry.

Conclusion

In sum, after a close analysis of the appellate opinion, and consideration of the Supreme Court’s recent ruling, we find that the court of appeal erred in reversing the defendant’s convictions on the basis of the Batson issues raised on appeal.
DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed. This matter is remanded to the court of appeal for its consideration of the other issues raised by the defendant on appeal.
REVERSED AND REMANDED.
JOHNSON, J., dissents with reasons.
WEIMER, J., would grant and docket.

. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

.The court of appeal concluded:
After reviewing the voluminous record as a whole, we seriously doubt the sincerity and validity of the proffered race-neutral reason where, as here, [1] the prosecutor failed to further inquire into Mr. Hughes’ "medical condition,” [2] failed to ask any other jurors about relevant medical conditions, and [3] accepted Ms. Thibodeaux, for jury service, without questioning. In light of the record before us, we find that the prosecutor's proffered explanation for striking Mr. Hughes was implausible and strongly infers discriminatory intent. Accordingly, we find that the trial judge erred in determining that the prosecutor's explanations for striking Mr. Hughes were convincingly race-neutral. Based on the foregoing, we hold that the trial court erred in denying defense counsel's Batson challenge as to Mr. Hughes.
Jacobs, 2007-887 p. 18, 13 So.3d at 691 (emphasis added).

. As conceded by the court of appeal, the trial judge expressly stated he accepted the prosecution's race-neutral explanation for all of the challenged prospective jurors except Mr. Hughes. However, for Mr. Hughes, defense counsel stated on the record at a later time that the trial court had, indeed, ruled on the Batson challenge raised for the peremptory challenge of Mr. Hughes. See Jacobs, 2007-887 p. 16 n. 60; 13 So.3d at 690 n. 60.

. In other words, Ms. Rood may not also have been a victim of crime and have been observed sleeping during voir dire.

. The court of appeal earlier noted ‘‘[ajddi-tionally, the record does not reflect that Ms. Florence was sleeping.” Jacobs, 2007-887 p. 20, 13 So.3d at 692.

. Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005).

. Snyder v. Louisiana, 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). The trial judge in this case was also the trial judge in State v. Snyder, which the Supreme Court case reversed.

. In Thaler v. Haynes, two judges presided over voir dire; one presided over the prospective juror questioning and a different judge presided over the peremptory challenges. The presiding judge, in finding the demeanor-based challenge race-neutral, was unable to comment further on his ruling because he had not been present to see the prospective juror’s demeanor during questioning. Although the state courts on direct appeal and state post conviction, and the federal district court on habeas review, rejected Haynes' Batson claim, the federal appellate court reversed, holding Haynes was entitled to a new trial.

. Instead, the trial judge commented he did not really notice the short pants.

. The state disputes this number and claims it used nine of its 12 peremptory challenges. The state additionally contends the record shows that one of the peremptory challenges imputed to the state was actually a cause challenge. For purposes of this analysis, we do not find it necessary to clarify this point.