STATE OF LOUISIANA

VERSUS

RON C. YOUNGBLOOD

NO. 18-KA-445

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ST. JAMES, STATE OF LOUISIANA
NO. 72,64, DIVISION "C"
HONORABLE KATHERINE TESS STROMBERG, JUDGE PRESIDING

May 22, 2019

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Stephen J. Windhorst, and John J. Molaison, Jr.

<u>**AFFIRMED**</u>
    **MEJ**
    **SJW**
    **JJM**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Ricky L. Babin
    Lindsey D. Manda

COUNSEL FOR DEFENDANT/APPELLANT,
RON C. YOUNGBLOOD
    Ron C. Youngblood
    Lieu T. Vo Clark

**JOHNSON, J.**

Defendant appeals his convictions and sentences for attempted first degree murder and felon in possession of a firearm raising numerous issues, both through counsel and *pro se*, including the sufficiency of the evidence, alleged *Batson*[1] violations, police and prosecutorial misconduct, the incompleteness of the appellate record, the denial of a jury instruction regarding an alleged responsive verdict to the charge of felon in possession of a firearm, and the excessiveness of his consecutive maximum sentences. For the reasons that follow, we affirm Defendant's convictions and sentences.

## STATEMENT OF THE CASE

Defendant, Ron Youngblood, was indicted by a grand jury on August 11, 2015 and charged with two counts of attempted first degree murder of Deputy Michael Dufresne and Sergeant Dustin Jenkins, in violation of La. R.S. 14:27 and La. R.S. 14:30 (counts one and two), and one count of felon in possession of a firearm, in violation of La. R.S. 14:95.1 (count three). He pled not guilty and proceeded to trial on September 25, 2017. After a five-day trial, the jury found Defendant guilty on counts one and three and not guilty on count two (attempted first degree murder of Sergeant Jenkins). On January 22, 2018, the trial court sentenced Defendant to 50 years at hard labor on count one and 20 years at hard labor on count three, both without benefit of parole, probation or suspension of sentence, to run consecutively to each other. This appeal follows.

## FACTS

On May 24, 2015, the St. James Parish Sheriff's Office ("SJPSO") received a 911 call regarding a suspicious male, described as a bald-headed "bright skinned male" wearing a suit, who was walking up and down Legion Street with a gun. Officers Michael Dufresne and Dustin Jenkins with the SJPSO responded

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 104, 106 S.Ct. 1712, 1727, 90 L.Ed.2d 69 (1986).

separately to the call. Upon their arrival, the officers observed four African-American males standing near two cars parked on the side of the roadway, one of whom appeared to match the description provided to the 911 dispatcher. Officer Jenkins testified that the dash-cam video from his police unit depicted the subject matching the description given by the 911 caller holding a shiny object in one of his hands. Both officers were driving fully marked patrol units and were dressed in SJPSO department issued uniforms.

As the officers exited their police units, which they strategically parked near the four individuals so as to block them in, and began their approach, one of the men began firing a pistol at Officer Dufresne who was approximately twenty feet away.[2] Officer Jenkins explained that when he exited his vehicle he could hear that Officer Dufresne had already exited his vehicle, and as he turned around to close his door, he heard a loud "pop." Officer Jenkins recalled that he then heard three to four subsequent "pops," which drew his attention towards the four subjects where he saw the "tall, slender, light-skinned" male subject in a tan jumpsuit with his hand outstretched and "an object in his hand with a flash coming from it." It was then that Officer Jenkins registered that the subject was firing a gun pointed in Officer Dufresne's vicinity. Officer Jenkins testified that it was at that time that he returned fire.

Meanwhile, Officer Dufresne testified that when he exited his vehicle, he observed one of the male subjects dressed in red run towards a trailer. As he was ordering the subject to stop, shots were fired. He indicated that he did not immediately know which direction the shots were fired from but knew they were coming from his left side. When he turned toward his left, the muzzle flash from a gun drew his attention, at which time he saw the suspect matching the description

---

[2] The dash-cam video from Officer Jenkins' police unit was out of view of the shooting; however, numerous gunshots can be heard on the video, which was played for the jury.

provided by the 911 caller shooting at him. Officer Dufresne testified that the gun was directed straight at him, so he returned fire. The individual who fired the shots at Officer Dufresne was later identified as Defendant.

The officers' return fire struck Defendant who attempted to flee while continuing to fire his weapon. Defendant was subsequently apprehended, and a silver handgun was recovered approximately ten feet from where he was arrested. A DNA analysis of the recovered firearm indicated that Defendant's DNA was on the weapon and that the weapon had, in fact, been fired at the scene of the shooting.[3] While Defendant was being detained, a subsequent shot was fired near the original location of the shooting.[4]

The other three males that were present at the scene with Defendant were identified as Roderick Bourgeois, Quindell Jones, and Tavish Milton.[5] While all three individuals provided statements to the police, Bourgeois was the only one of the three to testify at trial. Bourgeois testified that he was standing next to Defendant when he observed Defendant fire the first gunshot towards the police car prompting the police to return fire. He could not recall the exact number of times Defendant fired his gun after the initial shot was fired but stated that it was multiple times. Bourgeois further explained that he did not see the officer holding a weapon at the time the officer exited his vehicle.

*ISSUES*

On appeal, appellate counsel raises two assignments of error, both relating to the excessiveness of Defendant's consecutive maximum sentences. Additionally, Defendant filed a *pro se* brief raising 21 assignments of error, all of which were

---

[3] Four shell casings from this weapon were recovered at the scene.

[4] A .40 caliber casing and magazine were recovered from the scene that did not belong to the weapon fired by Defendant or either of the officers.

[5] Bourgeois was the only subject left on the scene when the officers returned after Defendant was arrested.

not properly briefed.[6]  Of the assignments of error that were properly briefed, many overlapped and relate to the following six issues: sufficiency of the evidence of both convictions, prosecutorial misconduct, police misconduct, *Batson* violation, an incomplete appellate record, and failure to charge the jury with a responsive verdict.

## *DISCUSSION*

Sufficiency of Evidence

The standard of review for determining the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  Under the *Jackson* standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt but rather whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution.  *State v. Flores*, 10-651 (La. App. 5 Cir. 5/24/11); 66 So.3d 1118, 1122.

*Attempted First Degree Murder*

Defendant argues that the State failed to prove beyond a reasonable doubt that he had specific intent to kill Officer Dufresne.  He asserts that the officers' testimonies should not be considered because they are perjured and that eyewitness Bourgeois' testimony is insufficient to meet the State's burden.  Defendant also contends the State failed to prove that he fired the first shot and was not acting in

---

[6]  All assignments of error made to the courts of appeal must be briefed, and the court may consider any assignment of error that has not been briefed as abandoned.  Uniform Rules – Courts of Appeal, Rule 2-12.4; *State v. Camp*, 16-473 (La. App. 5 Cir. 3/15/17); 215 So.3d 969, 973.  Restating an assigned error in brief without argument or citation of authority does not constitute briefing.  *State v. Lauff*, 06-717 (La. App. 5 Cir. 2/13/07); 953 So.2d 813, 819.

self-defense when he returned fire. He further avers that the interviews of Quindell Jones and Tavish Milton establish that the police started the "gun battle" without provocation and that the audio recording from Officer Jenkins' police unit's dash-cam further aids in proving the police shot first based upon the recorded sounds establishing the proximity of the gunfire.

Defendant was convicted of attempted first degree murder of Officer Dufresne in violation of La. R.S. 14:27 and La. R.S. 14:30. La. R.S. 14:30(A)(2) defines first degree murder as the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm upon a peace officer.[7] The crime of attempted first degree murder requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. La. R.S. 14:27(A); *State v. Girod*, 94-853 (La. App. 5 Cir. 3/15/95); 653 So.2d 664. Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Because specific intent is a state of mind, it need not be proven as a fact but may be inferred from the circumstances and actions of the accused. *Girod*, *supra.*

Specific intent to kill can be inferred from the intentional use of a deadly weapon such as a knife or a gun. *State v. Knight*, 09-359 (La. App. 5 Cir. 2/9/10); 34 So.3d 307, 317, *writ denied*, 10-2444 (La. 10/21/11); 73 So.3d 376. It may also be inferred from the act of pointing a gun and firing it at a person. *State v. Alsay*, 11-562 (La. App. 5 Cir. 12/13/11); 81 So.3d 145, 149, *writ denied*, 12-1041 (La. 9/21/12); 98 So.3d 335; *State v. Gonzalez*, 07-449 (La. App. 5 Cir. 12/27/07); 975 So.2d 3, 8, *writ denied*, 08-0228 (La. 9/19/08); 992 So.2d 949. Whether a defendant possessed the requisite intent in a criminal case is a question for the

---

[7] La. R.S. 14:30(B)(1) defines a peace officer as "any peace officer, as defined in R.S. 40:2402, and includes any ... sheriff, deputy sheriff, local or state policeman ... [or] federal law enforcement officer[.]"

trier-of-fact, and a review of the correctness of this determination is guided by the *Jackson* standard. *State v. Deweese*, 13-293 (La. App. 5 Cir. 10/30/13); 128 So.3d 1186, 1192.

The evidence at trial established that Defendant pointed and fired his gun at Officer Dufresne multiple times while the officer was engaged in the performance of his lawful duty as a peace officer.[8] Defendant does not contest that he fired a weapon, only that the State failed to prove he fired the first shot. Defendant maintains he did not fire the first shot and, thus, was justified in his actions; however, the evidence proves otherwise.

Although neither Officer Dufresne nor Officer Jenkins observed Defendant fire the initial gunshot, their attention was drawn toward the shooter because of the initial firing, at which time they observed Defendant fire the remaining gunshots directed at Officer Dufresne who was standing approximately 20 feet away.[9] As noted above, specific intent may be inferred from the act of pointing a gun and firing it at a person. *See Alsay*, *supra*.

Additionally, eyewitness Bourgeois testified that he was standing next to Defendant and personally observed Defendant fire the first gunshot in the direction of the officer's car. Whether anyone else in the group may have also fired a weapon, as alluded to by Defendant, is irrelevant because the officers' testimonies established that they observed Defendant shoot at Officer Dufresne **before** they returned fire. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of

---

[8] The parties stipulated to the fact that Officer Dufresne was engaged in the performance of his lawful duty as a peace officer at the time of the incident.

[9] While Defendant contends the officers' testimonies should be disregarded as perjured, as raised in one of Defendant's *pro se* assignments relating to prosecutorial misconduct, the reviewing court is to consider both admissible and inadmissible evidence when determining whether the evidence is sufficient to support the conviction. *See State v. Hearold*, 603 So.2d 731, 734 (La. 1992).

fact, is sufficient to convict. *See State v. Addison,* 00-1730 (La. App. 5 Cir. 5/16/01); 788 So.2d 608, 613, *writ denied*, 01-1660 (La. 4/26/02); 814 So.2d 549.

While Defendant argues eyewitness Bourgeois' testimony does not provide support for the element of specific intent to kill as he testified that Defendant was shooting towards the officer's car and not the officer himself, Officer Dufresne testified that he was standing next to his car when Defendant was shooting at him. Thus, Bourgeois' testimony corroborates the officers' testimonies that Defendant was shooting in the direction of Officer Dufresne.

Defendant also attempts to rely on the statements given by Quindell Jones and Tavish Milton, who were also present on the scene at the time of the shooting, to prove that the officers "started the gun battle without provocation"; however, neither Jones nor Milton testified at trial, and their statements were not introduced into evidence or considered by the jury. Thus, we do not consider them.

Defendant further avers that the dash-cam video establishes that the first shot fired is "loud and can easily be distinguished as being right in the immediate vicinity of the recording device, and the subsequent three to four shots are easily distinguished as being fired from a distance," thus, proving the initial shot was fired by one of the officers and not him. In conjunction with the witnesses' testimonies, the jury listened to the audio from the dash-cam video and apparently rejected Defendant's theory. It is not the function of the appellate court to assess the credibility of witnesses or re-weigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95); 661 So.2d 442, 443.

Finally, Defendant argues that his actions were done in self-defense. However, Defendant presented no such evidence or theory at trial nor was there a jury instruction given by the trial court as to self-defense. An appellate court need not consider a claim of self-defense raised for the first time on appeal. *State v. Jackson*, 06-565 (La. App. 5 Cir. 12/27/06); 948 So.2d 269, 273.

Based on the evidence, we find a rationale trier of fact could have found beyond a reasonable doubt that Defendant had specific intent to kill Officer Dufresne. Accordingly, we find the evidence sufficient to sustain Defendant's conviction for attempted first degree murder.

*Felon in Possession of a Firearm*

Regarding his conviction for possession of a firearm by a convicted felon, Defendant asserts the evidence was insufficient because the State failed to prove that the ten-year cleansing period under La. R.S. 14:95.1(C) had not lapsed. Specifically, he claims the State erroneously computed the ten-year cleansing period as to his prior attempted manslaughter conviction, which was used to charge him with a violation of La. R.S. 14:95.1. He acknowledges that a stipulation was agreed upon regarding his prior conviction, but he maintains the stipulation did not include the satisfaction of the ten-year cleansing period.

To obtain a conviction for possession of a firearm by a convicted felon, the State was required to prove beyond a reasonable doubt that Defendant had: (1) possession of a firearm; (2) a prior conviction for an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) the general intent to commit the offense. *State v. Chairs*, 12-363 (La. App. 5 Cir. 12/27/12); 106 So.3d 1232, 1250, *writ denied*, 13-0306 (La. 6/21/13); 118 So.3d 413.

On appeal, Defendant only challenges the evidence regarding the absence of the ten-year cleansing period. However, Defendant stipulated to the fact that he had been previously convicted of an enumerated felony and that his conviction was within the statutory ten-year cleansing period. This stipulation was reduced to writing and signed by Defendant, his two defense attorneys, and the State. The jury was advised by the trial court of the stipulation – that on March 5, 1992,

Defendant was convicted of a felony enumerated in La. R.S. 14:2(B)[10] and that the ten-year cleansing period as provided in La. R.S. 14:95.1(C) had not passed since the date of Defendant's parole on December 7, 2012. Thereafter, the trial court instructed the jury that in order to convict Defendant of the offense of possession of a firearm by a convicted felon, it must find Defendant possessed a Bryco Arms, semi-automatic 9 mm pistol on May 24, 2015.

Despite the language of the stipulation, Defendant argues it did not incorporate the ten-year cleansing period. He contends the stipulation was ambiguous and, thus, should be construed against the State and in accordance with his reasonable understanding of the agreement. He further asserts the stipulation was not properly filed into the record and, therefore, should not have been considered as evidence.

The appellate record contains a written stipulation that was filed into the lower court record on the last day of trial, which states:

> STATE OF LOUISIANA and the defendant, Ron C. Youngblood (BM, DOB: 08/14/69), SID: 0001421912, through his undersigned counsel herein stipulate to the following:
> I.
> Defendant Ron C. Youngblood (BM, DOB: 08/14/69), charged with R.S. 14:95.1 Possession of a Firearm by a Person Convicted of Certain Felonies, arrested on June 12, 2015, and charged by formal Bill of Indictment on August 11, 2015 is in fact one in the same person as the Ron C. Youngblood (BM, DOB: 08/14/69), who was arrested on March 5, 1992 by the St. James Parish Sheriff's Office and convicted of R.S. 14:27(31) Attempted Manslaughter on September 3, 1992, in the Parish of St. James.
> II.
> And that the ten (10) year cleansing period as provide [sic] in R.S.14:95.19 © [sic] has not passed since the date of his parole on December 7, 2012 and that the current charge complies with the provisions of R.S. 14:95.1 as evidenced by the exhibit attached hereto from.

Attached to the stipulation, which as noted above was signed by Defendant, his defense attorneys, and the State, was documentation which established the

---

[10] Defendant stipulated that he was previously convicted of attempted manslaughter, a violation of La. R.S. 14:27 and La. R.S. 14:31.

existence of the prior conviction and Defendant's discharge from custody as proof that ten years had not passed since completion of his sentence for his 1992 conviction and the commission of the offense of possession of a firearm by a convicted felon. We find this stipulation is clear, was properly filed into the record, and directly contradicts Defendant's allegation that the satisfaction of the ten-year cleansing period was not incorporated into the stipulation.

A stipulation has the effect of withdrawing a fact from issue and disposing with the need for proof of that fact. *State v. Seals*, 09-1089 (La. App. 5 Cir. 12/29/11); 83 So.3d 285, 320-21, *writ denied*, 12-293 (La. 10/26/12); 99 So.3d 53, *cert. denied*, 569 U.S. 1031, 133 S.Ct. 2796, 186 L.Ed.2d 863 (2013). "A stipulation has the effect of binding all parties and the court . . . . Such agreements are the law of the case." *Id.*, quoting *State v. Smith*, 39,698 (La. App. 2 Cir. 6/29/05), 907 So.2d 192, 199. Accordingly, the State only needed to prove possession and general intent at trial. The State accomplished this through the testimonies of Officer Dufresne, Officer Jenkins, and eyewitness Bourgeois who all testified that they observed Defendant firing a handgun, as well as through the DNA evidence linking Defendant to the Bryco Arms semi-automatic 9 mm pistol found near him at the time of his arrest.[11]

Considering the stipulation and the evidence presented,[12] we find any rational trier of fact could have found all of the essential elements of the offense of

---

[11]  Defendant did not challenge the sufficiency of the evidence regarding these remaining statutory elements. Nonetheless, pursuant to a review under *State v. Raymo*, 419 So.2d 858, 861 (La. 1982), we note the evidence was sufficient to prove the remaining elements of the crime of possession of a firearm by a convicted felon.

[12]  In a *pro se* assignment of error, Defendant asserts the State abandoned its right to present any evidence regarding the cleansing period set forth under La. R.S. 14:95.1(C) when it failed to address this essential element during its opening statement. Thus, Defendant contends the State should have been precluded from presenting this proof before the jury. The only proof of the satisfaction of the cleansing period was the trial court's advisal to the jury regarding the parties' stipulation, and we note that Defendant did not object to the jury being advised of the stipulation. Therefore, we find this alleged error has been waived. *See* La. C.Cr.P. art. 841; *State v. Berrora-Reyes*, 12-581 (La. App. 5 Cir. 1/30/13); 109 So.3d 487, 499.

We further point out that Defendant's argument that the trial court had ruled evidence regarding the cleansing period was inadmissible is misplaced. The ruling to which Defendant refers pertained to the State being precluded from specifically referencing the crime – attempted manslaughter – for which Defendant had been previously convicted. The ruling was based on the parties' stipulation that Defendant had been convicted of an enumerated felony, thereby satisfying that essential element of La. R.S. 14:95.1.

possession of a firearm by a convicted felon were proven beyond a reasonable doubt. Therefore, we find the evidence sufficient to support his conviction.

Prosecutorial Misconduct

In several assignments of error, Defendant maintains that the State through the testimony of Detective Barry Ward, knowingly relied upon false testimony to obtain a conviction for attempted first degree murder. In particular, Defendant avers that the State had access to Detective Ward's investigative report in which he found that none of the witnesses were able to state that they observed Defendant fire the first shot. Thus, he contends that when the State solicited contrary testimony from Officers Dufresne and Jenkins at trial, it knowingly solicited the witnesses to perjure their testimonies.

If a prosecutor allows a state witness to give false testimony without correcting it, a reviewing court must reverse the conviction gained as a result of the perjured testimony, even if the testimony was only relevant to the credibility of the witness. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); *State v. Reed*, 14-1980 (La. 9/7/16); 200 So.3d 291, 321, *rehearing granted in part on other grounds*, 14-1980 (La. 10/19/16); 213 So.3d 384, *cert. denied*, 137 S.Ct. 787, 197 L.Ed.2d 787, 85 USLW 3407 (2017). To prove a *Napue* claim,[13] the defendant must show that the prosecutor acted in collusion with the witness to facilitate false testimony. *State v. Broadway,* 96-2659 (La. 10/19/99); 753 So.2d 801, 814, *cert. denied*, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000).

---

[13] In *Napue*, *supra*, at the defendant's murder trial, the principal state witness, then serving a 199-year sentence for the same murder, testified in response to a question by the State that he had received no promise of consideration in return for his testimony. The State had, in fact, promised him consideration but did nothing to correct the witness' false testimony. The jury was apprised, however, that a public defender had promised "to do what he could" for the witness. The Supreme Court found the failure of the State to correct the testimony of the witness, which it knew to be false, denied the defendant due process of law in violation of the Fourteenth Amendment to the Constitution of the United States. The Supreme Court reasoned that a jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend. It concluded that had the jury been apprised of the true facts, it might well have found the witness had fabricated testimony in order to curry the favor of the State who was prosecuting the case in which the witness was testifying.

When false testimony has been given under such circumstances, the defendant is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial. *State v. Ventris*, 10-889 (La. App. 5 Cir. 11/15/11); 79 So.3d 1108, 1126, citing *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). However, the grant of a new trial based upon a *Napue* violation is proper only if: (1) the statements at issue are shown to be actually false; (2) the prosecution knew they were false; and (3) the statements were material. *Ventris*, *supra* at 1126.

Defendant claims that both Officer Jenkins and Officer Dufresne offered perjured testimony when they both initially indicated that they did not see the first shots fired but later stated, through prompting by the State, that Defendant fired the first shot. During Officer Jenkins' direct examination by the State, he testified that he heard a loud pop as he was closing the door to his vehicle after exiting. After registering that the sound he heard was gunfire, Officer Jenkins stated that he heard three to four more pops, turned his attention towards the four subjects, and saw Defendant firing a weapon in Officer Dufresne's direction at which time he drew his service weapon and returned fire.

The prosecutor attempted to clarify Officer Jenkins' testimony by asking, "So is it accurate to say when you heard the initial shots, you couldn't tell where they –", at which time Officer Jenkins interrupted by responding, "The initial one or two, no sir." The prosecutor then asked, "Now, just to be accurate, Lieutenant Jenkins, the subject shot first?" and Officer Jenkins affirmatively replied.

During Officer Dufresne's direct testimony, he testified that when exited his vehicle, one subject started running, and he immediately ordered the subject to stop. It was then that Officer Dufresne heard shots fired. He stated that he could not immediately tell from which direction the shots were being fired, but subsequently realized the shots were coming from his left side. Officer Dufresne

explained that when he turned in that direction, he saw the muzzle flash and saw Defendant shooting at him. On re-direct, the prosecutor asked, "And was it this defendant that fired first?" to which Officer Dufresne responded, "Yes, sir."

Defendant mischaracterizes the testimonies of Officers Jenkins and Dufresne. The officers consistently testified that they only returned gunfire after Defendant first fired at one of them. Contrary to Defendant's assertion, at no time did the officers testify that Defendant was the person who fired the first shot at the scene. Therefore, Defendant has failed to establish the first part of the *Napue* test – that the statements at issue are actually false. As such, we find no merit to Defendant's claims that the State knowingly solicited perjured testimony.

Police Misconduct

Defendant also argues that his due process rights were violated when procedural policies governing officer involved shootings were violated. Specifically, he asserts that Officers Dufresne and Jenkins violated policy by speaking with one another regarding the incident and failing to be kept separate from one another until after they had been interviewed by the Louisiana State Police regarding the shooting incident. As a result, Defendant asserts the integrity of the investigation was compromised by the officers' collusion.

Detective Barry Ward with the Louisiana State Police testified at trial that he interviewed the officers after the shooting. On cross-examination he was asked about the interview process when two police officers are involved in a shooting incident. Detective Ward explained that the officers are interviewed separately so as to preserve the integrity of the statements given. He further stated that he would expect the officers to be kept apart before they are interviewed. Detective Ward testified that he was unaware whether Officers Dufresne and Jenkins had an opportunity to speak to one another before their interviews, but recalled they were

kept in separate rooms of the courthouse where the interviews were being conducted.

Officer Dufresne was specifically asked on cross-examination about his communication with Officer Jenkins after the shooting incident. Officer Dufresne stated that he "may have" spoken briefly with Officer Jenkins about what had happened before State police arrived, but explained that he and Officer Jenkins were both more worried about calling their families to let them know they were okay.

Defendant relies on Detective Ward's and Officer Dufresne's testimonies to support his position that there was collusion between the officers which compromised the integrity of the investigation and violated his due process rights.[14] The record does not support Defendant's argument. First, there is nothing in the record regarding the substance of anything that may have been discussed between the officers; thus, there is no evidence that the officers colluded in an effort to fabricate a story favorable to themselves. Second, the jury was presented with Defendant's theory of collusion and, despite Defendant's allegations, clearly found the officers to be credible. Third, the testimony of Roderick Bourgeois, an independent witness, corroborated the officers' version of events. Therefore, we find nothing to support Defendant's claim of collusion between the officers.

Defendant further alleges police misconduct during the interviews of Tavish Milton and Quindell Jones. Defendant contends that Detective Oliver Jackson's questioning of Milton constituted obstruction of justice because the detective was not seeking the truth but rather was trying to attribute the initiation of the "gun battle" to Defendant. He asserts Detective Jackson lied, threatened, intimidated,

---

[14] To the extent Defendant argues that the officers violated the Louisiana State Trooper's Handbook governing officer involved shootings, which in turn violated his due process rights, Defendant failed to raise this argument before the trial court. Thus, he has waived the issue for purposes of appeal. *See* La. C.Cr.P. art. 841(A).

manipulated, and badgered Milton so badly that he became scared yet never wavered as to who fired the first shot – the police. Defendant further contends Detective Jackson and Detective Barry Ward also obstructed justice when they badgered Jones during the interview into providing them with information that would vindicate the officers in this case from any wrongdoing.

Neither Milton's nor Jones' statement was introduced into evidence at trial. Additionally, neither Milton, Jones, nor Detective Jackson testified at trial. While Detective Ward testified at trial, he did not testify regarding Jones' or Milton's statement. As such, none of the statements of which Defendant now complains were presented to or considered by the jury. Accordingly, Defendant has failed to demonstrate any wrongdoing in connection with the statements or any resulting prejudice.

## *Batson* Violation

In a single assignment of error, Defendant avers the State systematically excluded five African-American jurors – Bryan Bourgeois, Melissa Roussel, Bridget Landry, Anthony Nelson, and Overton Celestin – from the jury on the basis of race and failed to offer adequate race-neutral reasons for the prospective jurors' exclusion.

The accused has a right to full *voir dire* examination of prospective jurors and to challenge jurors peremptorily. The number of peremptory challenges is fixed by law, with the State and the defendant each having 12 peremptory challenges when the charged offense is necessarily punishable by imprisonment at hard labor. La. Const. art. 1, §17; La. C.Cr.P. art. 799.

The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination on the basis of race in the exercise of peremptory challenges. *Batson v. Kentucky*, 476 U.S. 79, 104, 106 S.Ct. 1712, 1727, 90 L.Ed.2d 69 (1986). The *Batson* decision is codified in La. C.Cr.P. art. 795(C),

which provides that no peremptory challenge made by the State or the defendant shall be based solely upon the race of the juror.

When a claim is made that a peremptory challenge was based on race, a three-step analysis applies. First, the defendant challenging the peremptory strike must establish a *prima facie* case of purposeful discrimination. Second, if a *prima facie* showing is made, the burden shifts to the State to articulate a neutral explanation for the challenge. Third, the trial court must then determine if the defendant has carried his burden of proving purposeful discrimination. *State v. Sparks*, 88-0017 (La. 5/11/11); 68 So.3d 435, *cert. denied*, -- U.S. --, 132 S.Ct. 1794, 182 L.Ed.2d 621 (2012).

To establish a *prima facie* case of purposeful discrimination, the defendant must show: (1) the prosecutor's challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the prosecutor struck the venire person on account of his being a member of that cognizable group. *Id.* In determining whether the defendant has established a *prima facie* case, the trial court should consider all relevant circumstances, including any pattern of strikes by the State against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of the peremptory strikes was motivated by impermissible considerations, the composition of the venire and the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination. *State v. Massey*, 11-357 (La. App. 5 Cir. 3/27/12); 91 So.3d 453, 468, *writ denied*, 12-991 (La. 9/21/12); 98 So.3d 332.

If the trial court determines the defendant failed to establish the threshold requirement of a *prima facie* case, then the analysis is at an end, and the burden never shifts to the prosecutor to articulate neutral reasons. *Sparks*, *supra*.

However, a trial judge's demand that a prosecutor justify his peremptory strikes is tantamount to a finding that the defense has produced enough evidence to support an inference of discriminatory purpose. *State v. Green*, 94-887 (La. 5/22/95); 655 So.2d 272, 288.

If the *prima facie* showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. *State v. Jacobs*, 07-887 (La. App. 5 Cir. 5/24/11); 67 So.3d 535, *writ denied*, 11-1753 (La. 2/10/12); 80 So.3d 468, *cert. denied*, --U.S.--, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012), citing *Batson*, 476 U.S. at 97-98, 106 S.Ct. at 1723-24. At the second step of the *Batson* inquiry, the issue is the facial validity of the prosecutor's explanation. *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (*per curiam*). Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *Id.*

The trial court must then determine whether the defendant has established purposeful discrimination. *Jacobs*, *supra* (citing *Batson*, 476 U.S. at 98, 106 S.Ct. at 1724). The final step of *Batson* requires the trial court to evaluate the persuasiveness of the justification proffered; however, the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. *Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771.

In this third step, it is the trial court's responsibility to assess the plausibility of the prosecutor's proffered race-neutral reason "in light of all evidence with a bearing on it." *Miller-El v. Dretke*, 545 U.S. 231, 241, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005). The trial court must evaluate the prosecutor's credibility by assessing "not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008).

In determining whether a defendant has met his burden of showing purposeful racial discrimination in the State's exercise of peremptory challenges, the question is whether the proof offered by the defendant, when weighed against the State's proffered race-neutral reasons, is strong enough to convince the trier of fact that the claimed discriminatory intent is present. *State v. Bourgeois*, 08-457 (La. App. 5 Cir. 12/16/08); 1 So.3d 733, 738, *writ denied*, 09-336 (La. 11/6/09), 21 So.3d 298. The focus of the *Batson* inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes. *State v. Tilley*, 99-0569 (La. 7/6/00); 767 So.2d 6, 12, *cert. denied*, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001).

A trial judge's findings on a claim of purposeful discrimination are entitled to great deference by the reviewing court because they depend largely on credibility evaluations. Credibility can be measured by factors including the prosecutor's demeanor, how reasonable or how improbable the explanations are, and whether the proffered reason has some basis in accepted trial strategy. *State v. Wilson*, 09-170 (La. App. 5 Cir. 11/10/09); 28 So.3d 394, 405, *writ denied*, 09-2699 (La. 6/4/10); 38 So.3d 299. The trial judge has the advantage of observing the characteristics and demeanor of the attorneys and prospective jurors. Therefore, the trial court occupies the best position for deciding whether a discriminatory objective underlies the peremptory challenges. *Id.* "[A] trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder v. Louisiana*, 552 U.S. at 477, 128 S.Ct. at 1207.

In this case, Defendant made several *Batson* challenges to the State's use of peremptory challenges to exclude prospective jurors who were African-American. The record shows the trial court called four venire panels. During the first venire, the State utilized only one peremptory challenge to excuse Bryan Bourgeois, an African-American male, and accepted six jurors – three African-American females

and three white males. The State later used two backstrikes on two of the three African-American females from the first panel—Melissa Roussel and Bridget Landry—at which time a *Batson* challenge was raised.

In the second venire, the State utilized one peremptory challenge to excuse Newrita Bowser, an African-American female[15] and later exercised a backstrike to excuse a previously selected white female juror. During this panel, the parties accepted three additional jurors – two white males and one African-American male.

In the third venire, the State used five peremptory challenges to excuse five African-American males, including Anthony Nelson and Overton Celestin, and accepted the last five jurors – three white females and two white males – and an African-American female as the first alternate juror. Defendant raised *Batson* challenges as to all five of the State's peremptory challenges in this venire; however, on appeal, Defendant only challenges the race-neutral reasons offered by the State as to Mr. Nelson and Mr. Celestin.

No peremptory challenges were made by the State in the fourth venire. Ultimately two African-Americans served on the jury and one African-American served as one of the alternate jurors.

Because the trial court ruled on the ultimate question of whether there was intentional discrimination, the preliminary issue of whether Defendant made a *prima facie* showing of purposeful discrimination is moot. *Sparks*, 68 So.3d at 473. The issue before us now is whether the trial court erred in finding that the State's explanations for exercising its peremptory challenges on the five prospective jurors identified by Defendant on appeal were sufficiently race-neutral. As stated above, unless a discriminatory intent is inherent in the State's

---

[15] The State offered race-neutral reasons for striking Ms. Bowser who had been excused before the State exercised its back-strikes on Ms. Roussel and Ms. Landry; however, Defendant does not challenge the reasons offered by the State as to Ms. Bowser on appeal.

explanation after review of the entire record, the reason offered will be deemed race-neutral. *State v. Elie*, 05-1569 (La. 7/10/06); 936 So.2d 791, 801, citing *Purkett*, 514 U.S. at 767, 115 S.Ct. at 1771. Thereafter, the question is whether the defendant's proof, when weighed against the prosecutor's proffered race-neutral reasons, is strong enough to persuade the trier-of-fact that such discriminatory intent is present. *Green*, 655 So.2d at 290.

*Prospective Juror Bourgeois*

During *voir dire*, Mr. Bourgeois, age 30, stated that he was married, a father of three young children, employed as a process operator, did not have any family members who were the victims of any violent crimes, had no family in law enforcement, and had been arrested before for possession of a Schedule I narcotic with the intent to distribute, which was later reduced to a misdemeanor offense.

The State specifically asked the prospective jurors whether they had ever had any prior negative interactions with law enforcement. Mr. Bourgeois indicated that he had, explaining that he had been pulled over because his car exhaust was too loud. He stated that he did not receive a ticket but was harassed by law enforcement for a little while.

The State also questioned the venire as to whether there was anything going on in their lives that would distract their attention from this case. Mr. Bourgeois raised his hand in response, stating he was in the process of building a house for which he was overseeing the construction. Defense counsel followed up by asking whether he would be able to get by for a couple of days by checking in with the contractors to ensure everything was ok, to which Mr. Bourgeois replied, "my wife may divorce me." Mr. Bourgeois was also questioned about his prior drug conviction and indicated that he had learned his lesson.

The State initially challenged Mr. Bourgeois for cause, arguing that he had a negative experience with law enforcement, was previously arrested for narcotics

with intent to distribute, and had an ongoing building construction project which would preclude him from staying focused. The trial court denied the State's challenge for cause, after which the State exercised one of its peremptory challenge to exclude him.

Defendant raised a *Batson* challenge, arguing that the State had already used three peremptory challenges on African-Americans. In offering race-neutral reasons for striking Mr. Bourgeois, the State explained that Mr. Bourgeois indicated that he had a bad experience with law enforcement having been harassed by the St. James Parish Sheriff's Office and that his wife would be very upset with him if he could not oversee their house construction.

Lack of interest or distraction due to personal affairs has been found to be race-neutral explanations to exclude prospective jurors. *See Green,* 655 So.2d at 287 n.17; *State v. Johnson,* 00-1552 (La. App. 5 Cir. 3/28/01); 783 So.2d 520, 526, *writ denied,* 01-1190 (La. 3/22/02); 811 So.2d 921; *State v. Williams,* 545 So.2d 651 (La. App. 5th Cir. 1989), *writs denied,* 556 So.2d 53 (La. 1990) and 584 So.2d 1157 (La. 1991). Additionally, a prior bad experience with police has also been found to be a race-neutral reason for striking a prospective juror. *See State v. Jones,* 00-162 (La. App. 5 Cir. 7/25/00); 767 So.2d 862, *writ denied,* 00-2484 (La. 6/22/01); 794 So.2d 783; *State v. Wilson,* 40,767 (La. App. 2 Cir. 8/23/06); 938 So.2d 1111, 1135, *writ denied,* 06-2323 (La. 4/20/07); 954 So.2d 159, *cert. denied,* 552 U.S. 917, 128 S.Ct. 275, 169 L.Ed.2d 201 (2007). Thus, we find the State provided a race-neutral explanation for exercising its peremptory challenge on Mr. Bourgeois.

Turning to *Batson'*s third step, Defendant argues for the first time on appeal that two white male jurors also expressed that they either had a prior bad experience with law enforcement or had been previously arrested for a crime, yet were not stricken by the State. Defendant argues that this demonstrates purposeful

discrimination. The United States Supreme Court has held that "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Miller-El*, *supra*. However, the mere fact that a prosecutor excuses one person with a particular characteristic and not another similarly situated person does not in itself show that the prosecutor's explanation was a mere pretext for discrimination. The accepted juror may have exhibited traits which the prosecutor could have reasonably believed would make him desirable as a juror.[16] *State v. Collier*, 553 So.2d 815, 822 (La. 1989).

Here, the trial judge accepted the State's race-neutral explanation as to Mr. Bourgeois and continued *voir dire* without further objection from Defendant. It is only now, for the first time on appeal, that Defendant claims, under a comparative analysis argument, that the State's race-neutral explanation was riddled with discriminatory intent. We find Defendant waived this argument by failing to challenge the prosecutor's explanations on this ground at the trial court level. *See* La. C.Cr.P. art. 841. "To withhold in the trial court a fact-specific argument in support of a *Batson* challenge carries with it all of the unfairness of holding challenges until 'trial has concluded unsatisfactorily,' and ought not to be permitted or encouraged." *Delvalle v. Herbert*, 2004 WL 1661075 (U.S. S.D.N.Y 2004), quoting *McCrory v. Henderson*, 82 F.3d 1243, 1249, 1247 (2nd Cir. 1996) (quoting *United States v. Forbes*, 816 F.2d 1006, 1011 (5th Cir. 1987)).

---

[16] We note that in addition to Mr. Bourgeois' past experience with law enforcement and his criminal history, the State cited Mr. Bourgeois' potential distraction due to the construction of his home as a race-neutral reason for exercising a peremptory challenge to exclude him. The potential for distraction did not apply to the two white male jurors to whom Defendant refers.

We find Defendant did not carry his burden of proving discriminatory intent in the State's exclusion of Mr. Bourgeois, and thus, the trial court did not err in denying Defendant's *Batson* challenge.

*Prospective Juror Roussel*

Ms. Roussel, age 51, stated she worked as a secretary at the First Assembly of God Church in Vacherie, Louisiana, had two grown children, had never been the victim of a crime, and had never been arrested or convicted of a crime. She informed the court that her cousin, who she sees "every now and then," was in law enforcement; however, she did not feel that her relationship with her cousin would affect her ability to be fair and impartial. When asked by the trial court whether she was related to anyone in the district attorney's office, she answered that she was related to "the guy who was sitting at that table" but did not feel her relationship would influence her as a juror.

In offering race-neutral reasons for striking Ms. Roussel in response to Defendant's *Batson* challenge, the State asserted that Ms. Roussel was related to a deputy sheriff and to an employee of the sheriff's department. Defendant offered no objection to the race-neutral explanation offered by the State or any further argument and continued with *voir dire*.

Connection with law enforcement may affect a juror's impartiality and has been found to be a sufficiently race-neutral reason for a peremptory challenge. *State v. Wilson*, 25,775 c/w 25,776 (La. App. 2 Cir. 2/23/94); 632 So.2d 861, 864. Defendant does not contest the adequacy of the race-neutral reason provided by the State but rather claims the race-neutral reason also applied to two non-African-American prospective jurors who were not struck by the State, thereby establishing the State's discriminatory intent in excluding Ms. Roussel. Again, Defendant did not raise this argument in support of his *Batson* challenge at the trial court level. Thus, we find he is precluded from raising this ground on appeal.

We find the trial court was not clearly erroneous in accepting the State's race-neutral reason for its use of a peremptory challenge on Ms. Roussel and denying Defendant's *Batson* challenge. Defendant failed to carry his burden of proving any discriminatory intent in the State's exercise of its peremptory challenge on Ms. Roussel.

*Prospective Jurors Landry and Nelson*

The record shows that Ms. Landry was a 50-year-old mother of two teenaged children, who had never been arrested, and that neither she nor any of her immediate family members had ever been the victim of a crime. As for Mr. Nelson, there is no personal background information in the record.

During *voir dire*, Ms. Landry informed the court that her brother was in jail, having been convicted of a violent crime. She further stated that she was related to a St. James Sheriff's Office deputy and that she knew the prosecutor, Charles Long. Nonetheless, Ms. Landry indicated that she could be fair and impartial and render a verdict in accordance with the law.

The State exercised a backstrike against Ms. Landry. In response to Defendant's *Batson* challenge, the prosecutor, Mr. Long, submitted that Ms. Landry knew him, that her brother had been convicted of a crime, and that she was related to a St. James Sheriff's Office deputy. The court stated that it was satisfied with the State's proffered reasons and continued with *voir dire* without any further argument by Defendant.

Next, Mr. Nelson was asked whether he had ever been stopped by the police. He responded that he had been stopped a few times, explaining that on one occasion it had been for an expired license plate which was resolved after they "talked for a little while." He indicated that he felt he was treated fairly. Mr. Nelson further stated that he believed he could be a fair and impartial juror.

In response to Defendant's *Batson* challenge as to the exclusion of Mr. Nelson by use of a peremptory challenge, the State indicated that one of the prosecutors was on some board with which Mr. Nelson was affiliated and that there was a "relationship with [the prosecutor] being on this board that he'll get an appointment for the executive level." The State also noted that Mr. Nelson was related to two deputies in St. James Parish. It further noted that the Gramercy Police Department had stopped Mr. Nelson and given him a hard time for his license plate bulb being out.

The reasons offered by the State for exercising its peremptory challenges on Ms. Landry and Mr. Nelson are sufficiently race-neutral. Having relatives in jail is a valid race-neutral reason for exercising a peremptory strike. *See State v. Jacobs*, 09-1304 (La. 4/5/10); 32 So.3d 227, 235; *State v. Lamark*, 584 So.2d 686, 696-97 (La. App. 1st Cir. 1991), *writ denied*, 586 So.2d 566 (La. 1991). Also, knowledge of the parties constitutes a race-neutral reason for a peremptory challenge. *See* Tilley, 767 So.2d at 13-14; State *v. Qualls*, 40,630 (La. App. 2 Cir. 1/27/06); 921 So.2d 226, 241; *State v. Mamon*, 26,337 (La. App. 2 Cir. 12/16/94); 648 So.2d 1347, *writ denied*, 95-0220 (La. 6/2/95); 654 So.2d 1104. And, as previously discussed, connection with law enforcement and prior bad experiences with police may affect a juror's impartiality and are sufficiently race-neutral reasons for a peremptory challenge. *See Wilson*, 632 So.2d at 864; *Jones*, 767 So.2d at 868-69.

As he did with Mr. Bourgeois and Ms. Roussel, Defendant argues that the reasons proffered by the State for excusing Ms. Landry and Mr. Nelson – relatives in law enforcement and relatives in jail – also applied to non-African-American prospective jurors who were not struck by the State.[17] Again, Defendant failed to

---

[17] We note that the State also struck Ms. Landry on the basis of her knowledge of one of the prosecutors, which did not apply to the other non-African-American jurors referenced by Defendant.

assert this argument at the trial court level and, thus, is precluded from raising it for the first time on appeal.

Upon review, we find the trial court did not abuse its discretion in denying Defendant's Batson challenges as to Ms. Landry and Mr. Nelson. Defendant did not carry his burden of proving discriminatory intent.

*Prospective Juror Celestin*

The record does not contain the preliminary questions asked by the court to all jurors regarding Mr. Celestin's background. Nonetheless, the State initially challenged Mr. Celestin for cause on the grounds that he was occasionally sleeping in court, which it argued demonstrated his inability to pay attention for three to four days of trial and to effectively participate in deliberations. The trial court denied the challenge for cause after it and defense counsel stated they had not noticed Mr. Celestin sleeping.

The State later exercised one of its peremptory challenges on Mr. Celestin, an African-American, to which Defendant raised a *Batson* challenge. When asked for its reasons for excusing Mr. Celestin, the State proffered that Mr. Celestin had been arrested for fighting in the past. It further stated it was still of the belief, based on personal observations by members of the prosecution team, that Mr. Celestin had been dozing off during *voir dire*. The trial court indicated that it was satisfied with the State's proffered reasons.

Defendant argues that the State's proffered reasons for excusing Mr. Celestin established discriminatory intent because no one observed Mr. Celestin sleeping except members of the State's prosecution team. He further claims, again for the first time on appeal, under a comparative analysis of Mr. Celestin's testimony with that of non-African-American prospective jurors who were not struck by the State, yet who had also been convicted of a crime and/or arrested, established the State's discriminatory intent.

The fact that a juror was asleep has been found to be a facially race-neutral reason for exclusion. *State v. Touissant*, 98-1214 (La. App. 5 Cir. 5/19/99); 734 So.2d 961, *writ denied*, 99-1789 (La. 11/24/99); 750 So.2d 980. Defendant did not challenge the State's proffered reason at the trial court level – Defendant never argued to the trial court that no one saw Mr. Celestin sleeping except the prosecution. Additionally, Defendant offered no argument regarding the State's alleged discriminatory intent based upon its non-exclusion of similarly situated non-African-American jurors. Because these argument were not made at the trial court level, they are not properly before us on appeal. *See* La. C.Cr.P. art. 841.

We do not find the trial court was clearly wrong in accepting the race-neutral reasons proffered by the State as to Mr. Celestin.

In summary, we do not find the State employed a tactic to exercise its peremptory challenges for a racially discriminatory purpose. Considering that a trial judge's determination regarding purposeful discrimination rests largely on credibility evaluations and that great deference is given to the trial judge in making this determination, we do not find the trial court erred in denying Defendant's *Batson* challenges. The trial judge was in the best position to examine the State's sincerity in its race-neutral explanations for challenging the prospective jurors.

Incomplete Appellate Record

Defendant argues his constitutional rights of appeal and judicial review have been violated based upon the insufficiency of the *voir dire* record provided in this case. Defendant contends that a total of one hour and 46 minutes are missing from the *voir dire* transcript and that at some points the *voir dire* transcript fails to identify the speaker. Defendant maintains he is substantially prejudiced without these recordings because he has "nothing to refer to concerning certain aspects of the *voir dire* process."

Louisiana Constitution Article I, § 19 provides that no person shall be subjected to imprisonment without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. La. C.Cr.P. art. 843 requires, in all felony cases, the recording of "all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel."

A defendant has a right to a complete transcript of the trial proceedings, particularly where, as in this case, appellate counsel did not represent Defendant at trial. Material omissions from trial court proceedings bearing on the merits of an appeal require reversal; however, a slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal does not require reversal of a conviction. A defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcript. *State v. Lampkin*, 12-391 (La. App. 5 Cir. 5/16/13); 119 So.3d 158, 166, *writ denied*, 13-2303 (La. 5/23/14); 140 So.3d 717. "The materiality of a given omission is measured by the prejudicial effect of the omission on the defendant in accessing the full scope of appellate review." *State v. Pernell*, 13-0180 (La. App. 4 Cir. 10/2/13); 127 So.3d 18, 28, *writ denied*, 13-2547 (La. 4/4/14), 135 So.3d 640.

The missing portion of the *voir dire* proceedings is not evidentiary and, therefore, its absence has not compromised Defendant's constitutional right to a judicial review of all evidence. *See Lampkin*, 119 So.3d at 167. The *voir dire* transcript in this case contains detailed information concerning which party excused which jurors and for what reason. Defendant does not identify a specific juror or jurors who should not have been seated based on the detailed information available in the *voir dire* transcript regarding each prospective juror's excusal or

lack thereof.  While Defendant correctly notes that the *voir dire* record does contain two entries indicating there was a "machine glitch" causing "missing audio," which Defendant contends encompassed certain questions and answers by prospective jurors Crystal Roberts, Vicky Simon, Lynell, Brown, Charli Giger, Tanya Teague, Dylan Roussel, and Alex Matherne, Defendant fails make any specific argument regarding challenges to any of these jurors.

Further, the alleged missing questions and answers of the prospective jurors referenced by Defendant can be gleaned from the remaining portions of the *voir dire* transcript or are immaterial.  Specifically, the record shows that the defense utilized peremptory challenges on Ms. Roberts, Ms. Simon, Mr. Giger, and Ms. Teague after its challenges for cause were denied by the trial court.  The record also reflects that the defense's challenges of Mr. Roussel and Mr. Matherne for cause were denied and that the two were then accepted and served as jurors in this case.  The record reflects the detailed reasons provided by the defense to support their challenges for cause for these prospective jurors.  Additionally, the record contains detailed reasons for the court's granting of the State's challenge for cause as to Ms. Brown.  Based on these discussions and rulings, we find the record was sufficient to allow Defendant to have perfected assignments for any errors which may have occurred during the unrecorded portion of *voir dire*.

Defendant further claims the record to be incomplete in that it fails to identify the speaker on several occasions during the *voir dire* questioning.  However, Defendant fails to indicate how such lack of identification has caused him prejudice.  While there are multiple places in the record where the speaker is listed as an "unidentified" male or female, the identity of most of those speakers can be ascertained based upon the content of their comments.  Where the identity of the speaker cannot be ascertained, the responses provided by the unidentified

individual are so general that they are not relevant or critical to a complete judicial review.

We find the record is sufficient for proper appellate review. Defendant has failed to demonstrate or particularize how he was prejudiced by the missing *voir dire* transcriptions – specifically, the missing portions of the *voir dire* proceedings do not relate to any specific errors assigned by Defendant on appeal.

Failure to Charge Jury with Responsive Verdict

Defendant argues that he was denied his constitutional rights when the trial court failed to charge the jury of one of the responsive verdicts to possession of a firearm by a convicted felon – attempted possession of a firearm by a convicted felon.

At the conclusion of the trial testimony, defense counsel requested that the responsive verdict of attempted possession of a firearm by a convicted felon be added to the list of possible verdicts for the charged La. R.S. 14:95.1 offense. The trial court denied the request and instructed the jury that it could find Defendant either guilty as charged or not guilty of possession of a firearm by a convicted felon.

When the accused requests and is refused an instruction on a lesser and included offense, or when the accused timely objects to the court's failure to give a responsive verdict instruction to which he is statutorily entitled, the conviction may be reversed. *State ex rel. Elaire v. Blackburn*, 424 So.2d 246, 248 (La. 1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983). However, in order for the conviction to be reversed, the defendant must demonstrate that the inclusion or exclusion of a responsive verdict was prejudicial and that fundamental due process has been violated. *State v. Serio*, 94-131 (La. App. 5 Cir. 6/30/94); 641 So.2d 604, 607-08, *writ denied*, 94-2025 (La. 12/16/94); 648 So.2d 388.

La. C.Cr.P. art. 814 does not mandate responsive verdicts for possession of a firearm by a convicted felon; therefore, the responsive verdicts are set forth in La. C.Cr.P. art. 815 as: (1) guilty; (2) guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or (3) not guilty. *State v. Morris*, 05-290 (La. App. 5 Cir. 11/29/05); 917 So.2d 633. Attempted possession of a firearm by a convicted felon is a responsive verdict to a charge of possession under La. R.S. 14:95.1. *Id.*

The trial court shall charge the jury as to the law applicable to each offense when the offense charged includes other "lesser" offenses of which the accused could be found guilty under La. C.Cr.P. art. 815. *See* La. C.Cr.P. art. 803; *State v. Dufore,* 424 So.2d 256 (La. 1982). However, although the court must charge the jury of the law applicable to lesser included offenses under La. C.Cr.P. art. 803, the charges must be pertinent – there must be evidence which would support a conviction of the lesser offenses. La. C.Cr.P. art. 807; *State v. Anderson*, 390 So.2d 878, 882 (La. 1980); *State v. Toomer*, 395 So.2d 1320, 1335 (1981), overruled on other grounds, *State v. Guillory*, 10-1231 (La. 10/8/10); 45 So.3d 612. The trial judge is required to charge the jury only with those charges of which the accused can be found guilty under the indictment and the evidence. *State v. Henry*, 449 So.2d 486, 488-89 (La. 1984).

In the present case, we find Defendant has failed to demonstrate that the exclusion of the responsive verdict was prejudicial. The requested jury charge would not have been appropriate considering the evidence set forth at trial. As previously discussed in response to Defendant's sufficiency argument, Defendant does not contend that he did not fire a gun. Also, multiple witnesses testified that they observed Defendant holding a gun. Further, Defendant's DNA was found on the discarded firearm used in the shooting and located near Defendant at the time of his apprehension. Therefore, we find that any alleged error regarding the trial

court's refusal to instruct the jury with regard to all possible responsive verdicts for the charge of La. R.S. 14:95.1 does not mandate reversal.

Excessiveness of Consecutive Maximum Sentences

Defendant argues that the consecutive nature of his maximum sentences, which total 70 years, renders them unconstitutionally excessive as he is 48 years old and, thus, will likely be incarcerated for the remainder of his natural life. He avers that his criminal history is not as extensive as recited by the trial court during sentencing since most of the references the trial court made to his past offenses did not result in a conviction. Defendant further maintains the trial court failed to give adequate consideration to the fact that there was a 23-year period between his last conviction and the instant offenses and did not consider the fact that no one was injured by him in the present case.

Defendant received the maximum 50-year sentence without benefits for his attempted first degree murder conviction, which carries a sentencing range of 20-50 years. La. R.S. 14:30 and La. R.S. 14:27(D)(1)(B). He also received the maximum 20-year sentence without benefits for his possession of a firearm by a convicted felon conviction, which carries a sentencing range of 10-20 years. La. R.S. 14:95.1(B). Further, these sentences were ordered to run consecutively.

At the sentencing hearing, the trial court indicated that it had reviewed the pre-sentence investigation report (PSI).[18] Additionally, it is evident that the trial court considered the sentencing guidelines of La. C.Cr.P. art. 894.1. Particularly, the trial court noted that Defendant, age 48, had an extensive criminal history – including an arrest for attempted first degree murder and armed robbery in 1989; charges for disturbing the peace, resisting an officer, and simple battery of a police officer in 1990 for which he served time in parish jail and was put on probation; an

---

[18] The PSI was placed in the record under seal and is considered confidential under La. C.Cr.P. art. 877. Because Defendant raises a claim of excessive sentence on appeal, we have reviewed the PSI as permitted by La. C.Cr.P. art. 877(C).

arrest in 1990 for aggravated battery with a dangerous weapon resulting in a finding of guilty of simple battery; a 1991 charge for aggravated battery which was later reduced to simple battery for which Defendant served thirty days in parish jail; a 1991 first degree murder arrest which was later quashed; a 1991 second degree battery charge; charges in 1992 for discharge of a firearm, first degree murder which was later reduced to [attempted] manslaughter, and felony aggravated criminal damage to property for which Defendant was sentenced to over ten years imprisonment; a 1992 charge for simple battery on a police officer; a 1992 conviction for felony simple escape for which Defendant was sentenced to five years imprisonment; a charge for attempted second degree murder resulting in a not guilty verdict; and a 2010 driving while intoxicated offense.

The trial court concluded that there was an undue risk that during the period of a suspended sentence or probation, Defendant would commit another crime given his prior criminal history which included multiple arrests for violent crimes and a previous conviction for attempted manslaughter. It ultimately agreed with the PSI's recommendation that Defendant receive the maximum sentence on each count and that the two sentences be served consecutively, noting that a lesser sentence would depreciate the seriousness of the offenses.

Defendant filed a motion to reconsider sentence under La. C.Cr.P. art. 881.1, alleging his sentences were unconstitutionally excessive based on multiple grounds, which was denied by the trial court. On appeal, Defendant only challenges the consecutive nature of his sentences, arguing that the consecutiveness of the sentences renders them excessive. He does not challenge his individual maximum sentences as excessive.

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or

imposes needless and purposeless pain and suffering. *State v. Horne*, 11-204 (La. App. 5 Cir. 2/14/12); 88 So.3d 562, 569, *writ denied*, 12-0556 (La. 6/1/12); 90 So.3d 437. The trial judge is afforded broad discretion in sentencing, and a reviewing court may not set aside a sentence for excessiveness if the record supports the sentence imposed. *Id.*; La. C.Cr.P. art. 881.4(D).

In reviewing a sentence for excessiveness, an appellate court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. *State v. Lobato*, 603 So.2d 739, 751 (La. 1992). On review, an appellate court does not determine whether another sentence might have been more appropriate but whether the trial court abused its discretion. *Horne*, 88 So.3d at 569. In considering whether the trial court abused its discretion in sentencing a defendant, a reviewing court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes by other courts. *Id.*

In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. *State v. Pamilton*, 43,112 (La. App. 2 Cir. 3/19/08); 979 So.2d 648, 655-56, *writ denied*, 08-1381 (La. 2/13/09); 999 So.2d 1145. The sentencing court may rely on sources of information usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. *State v. Myles*, 94-217 (La. 6/3/94); 638 So.2d 218, 219. These matters may be considered even in the absence of proof the defendant committed the other offenses. *State v. Doyle*, 43,438 (La. App. 2 Cir. 8/13/08); 989 So.2d 864, 870.

When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment "shall be served concurrently unless the court expressly directs that some or all be served consecutively." La. C.Cr.P. art. 883. Although Article 883 favors the imposition

of concurrent sentences for crimes committed as part of the same transaction or series of transactions, like the ones committed in the instant matter, a trial court retains the discretion to impose consecutive penalties on the basis of other factors, including the offender's past criminality, violence in the charged crimes, and the risks he poses to the safety of the community. *State v. Wilson*, 14-551 (La. App. 5 Cir. 1/28/15); 167 So.3d 903, 912.

If the trial court imposes consecutive sentences for crimes arising from a single course of conduct, it must articulate the reasons it feels the sentence is necessary. *Id.* Although the imposition of consecutive sentences requires particular justification when the crime arises from a single course of conduct, consecutive sentences are not necessarily excessive. *Wilson*, 167 So.3d at 912.

In the present case, the trial court clearly provided reasons justifying the imposition of consecutive sentences. The trial court took into consideration defendant's age, the facts of the case – including the fact that when officers arrived at the scene to investigate a suspicious person report, they were fired upon for no apparent reason – and his extensive criminal history, which included many arrests and charges for violent crimes (some of which involved dangerous weapons) and his previous attempted manslaughter conviction. Despite Defendant's contention to the contrary, the trial court properly considered his arrests as part of its sentencing determination even though some of them did not result in a conviction. *See Pamilton*, *supra*; *Doyle*, *supra*. The court also reasoned that Defendant's criminal history made him an undue risk for committing another crime. It further found that Defendant was in need of correctional treatment and that a lesser sentence would depreciate the seriousness of the crimes. We find these stated reasons and the record support the imposition of consecutive sentences.

We further find that the consecutive nature of Defendant's sentences do not render them unconstitutionally excessive. Similar consecutive sentences have been

upheld for similar crimes. *See State v. Tillman*, 47,386 (La. App. 2 Cir. 8/8/12); 104 So.3d 480, *writ denied*, 12-2035 (La. 1/25/13); 105 So.3d 714, where the defendant's total 83-year sentence (two 20-year sentences for attempted manslaughter, 40 years for attempted second degree murder, and three years for resisting an officer – all to run consecutively) was not found excessive where the defendant had a criminal history including a prior arrest for two counts of second degree murder for which he was acquitted, and where the defendant argued he was not the first one to fire his weapon in a shooting outside of his home); *State v. Jones*, 12-0891 (La. App. 4 Cir. 8/7/13); 122 So.3d 1065, *writ denied*, 13-2111 (La. 4/11/14); 137 So.3d 1212, where the defendants' two consecutive 40-year sentences for two counts of attempted second degree murder were not found excessive considering the defendants' actions during the drive-by-shooting where, in addition to the two victims of the attempted second degree murder, bullets struck several residences within two city blocks; *State v. Vollm*, 04-837 (La. App. 3 Cir. 11/10/04); 887 So.2d 664, 670, where the defendant's two consecutive 32-year sentences for two counts of attempted first degree murder were upheld when two police officers were shot during the course of an investigatory stop; and *State v. Johnson*, 11-1320, (La. App. 1 Cir. 2/13/12); 90 So.3d 556, where the defendant's consecutive two 50-year sentences for attempted first degree murder of two police officers and 15-year sentence for possession of a firearm by a convicted felon were not found to be excessive on the basis the defendant had an extensive, violent criminal history; had repeatedly shown a complete disregard for human life; and had disrespected law enforcement, the judicial system, and the community.

We find that Defendant's consecutive sentences are not a needless infliction of pain and suffering and are not grossly out of proportion to the severity of the crimes; thus, they are not unconstitutionally excessive. Defendant's violent and deliberate actions against Officer Dufresne while performing his lawful duties as a

peace officer were a grievous offense befitting serious consequences. The evidence at trial established that Defendant immediately opened fire for no apparent reason as the officers exited their vehicles in the middle of a residential neighborhood near bystanders, causing a risk of undue harm to everyone in the neighborhood. Based on these facts, we find no abuse of the trial court's discretion in imposing consecutive maximum sentences.

*ERRORS PATENT*

The record was reviewed for errors patent in accordance with La. C.Cr.P. art. 920. We find Defendant was not properly advised of the applicable prescriptive period for post-conviction relief. Specifically, the sentencing minute entry and transcript reflect the trial court informed Defendant that he had "two years to request any post-conviction relief, including out-of-time appeal, according to code of criminal procedure 930.8" but failed to advise him that the time period ran from when his conviction and sentence become final. Therefore, by way of this opinion, we advise Defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. C.Cr.P. arts. 914 or 922.

*DECREE*

For the foregoing reasons, Defendant's convictions and sentences for attempted first degree murder and felon in possession of a firearm are affirmed.

**AFFIRMED**

18-KA-445                37

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

MARY E. LEGNON
INTERIM CLERK OF COURT

CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 22, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

_____

MARY E. LEGNON
INTERIM CLERK OF COURT

## 18-KA-445

### E-NOTIFIED

23RD JUDICIAL DISTRICT COURT (CLERK)
HON. KATHERINE TESS STROMBERG (DISTRICT JUDGE)
LINDSEY D. MANDA (APPELLEE)        LIEU T. VO CLARK (APPELLANT)

### MAILED

HONORABLE RICKY L. BABIN
(APPELLEE)
DISTRICT ATTORNEY
23RD JUDICIAL DISTRICT COURT
POST OFFICE BOX 66
CONVENT, LA 70723

RON C. YOUNGBLOOD #315437
(APPELLANT)
LOUISIANA STATE PENITENTIARY
ANGOLA, LA 70712