948 So.2d 269 (2006)
STATE of Louisiana
v.
Elijah D. JACKSON Jr.
No. 06-KA-565.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2006.
*271 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Thomas J. Butler, Ken Dohre, James W. Adair, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., FREDERICKA HOMBERG WICKER, and GREG G. GUIDRY.
EDWARD A. DUFRESNE, JR., Chief Judge.
On July 24, 2003, the Jefferson Parish Grand Jury issued an indictment charging defendant, Elijah D. Jackson, Jr., with one count of second degree murder, a violation of LSA-R.S. 14:30.1. At his arraignment, defendant pled not guilty. The matter proceeded to trial, and on March 31, 2006, a twelve person jury found defendant guilty as charged. On April 20, 2006, the trial court denied both defendant's motion for new trial and motion for post verdict judgment of acquittal. Thereafter, on April 24, 2006, the trial judge sentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Defendant now appeals.

FACTS
On May 4, 2003, Deputy Todd Giacona of the Jefferson Parish Sheriff's office arrived at 1108 Scotsdale, and found an unresponsive victim, later identified as Bryan Gumms, with a gunshot wound to the left side of his neck.[1]
At trial, Selina Brue testified about the circumstances surrounding the shooting. According to Brue, on the morning of the incident, she was in her apartment with defendant, Bryan Gumms, Jermaine Hudson, Courtney Casey, and Ronnell Anderson playing cards when an argument began between defendant, Hudson, and some of the other men. During the argument, one of the men told defendant to get his gun, "[and the defendant] told them when he come [sic] back with his gun that he was going to use it." At this point, everyone left the apartment, including Brue who went with defendant.
Later, on May 4, 2003, at 2:30 p.m., defendant and Brue went to Scotsdale Street, and were in front of a building with Hudson, Gumms, Casey, Anderson, and other unnamed people. At approximately 4:00 or 4:30 p.m., defendant and Hudson became involved in a dispute. According to Brue, defendant "left and went through the cut, got his car from by my building, pulled back around and then got out the car with the gun." She saw defendant walk to the opposite side of the wall from Gumms. When defendant pulled out his gun, Hudson and Casey ran away. Defendant then walked towards Gumms and shot him from a couple of feet behind, as Gumms turned his head to look back. After he shot Gumms, defendant jumped in his car and left, taking his gun with him. Brue did not talk to police that night; however, the following day, she went to the investigation bureau and told Detective Eddie Klein what happened. She also identified defendant from a photographic lineup.
*272 Based on the information received from witnesses, Detective Klein arrested defendant. Subsequently, defendant gave two taped statements. In his first statement, defendant denied being in Scotsdale and shooting the victim. In his second statement, defendant admitted that he was involved in an argument with Jermaine Hudson. At some point, Gumms tried to defend his friend Hudson. Defendant then attempted to strike Gumms with the gun, but the gun went off. Defendant saw Gumms fall, and then fled in his car.

SUFFICIENCY OF THE EVIDENCE
On appeal, defendant argues that the evidence was insufficient to support the verdict as it failed to prove beyond a reasonable doubt that the homicide was not committed in self-defense.
The standard of review for determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Under the Jackson standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Barnes, 98-932 (La.App. 5 Cir. 2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La.9/17/99), 747 So.2d 1099. The trier of fact can accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. State v. Baker, 01-1397 (La.App. 5 Cir. 4/30/02), 816 So.2d 363, 365.
In this case, defendant was charged with second degree murder. LSA-R.S. 14:30.1 A(l) states that second degree murder is the killing of a human being when the offender has specific intent to kill or inflict great bodily harm. In order to prove second degree murder, the state must prove the killing and that the defendant had specific intent to kill or inflict great bodily harm. State v. Cazenave, 00-183 (La.App. 5 Cir. 10/31/00), 772 So.2d 854, 859, writ denied, 00-3297 (La.10/26/01), 799 So.2d 1151.
According to LSA-R.S. 14:20 A(1), a homicide is justifiable "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." When a defendant claims self-defense, the state must prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Cazenave, 772 So.2d at 860. The determination of a defendant's culpability focuses on a two-fold inquiry: 1) whether, from the facts presented, the defendant could reasonably have believed his life to be in imminent danger, and 2) whether deadly force was necessary to prevent the danger. While there is no unqualified duty to retreat from an altercation, the possibility of escape is a recognized factor in determining whether or not a defendant had a reasonable belief that deadly force was necessary to avoid the danger. State v. Woodhead, 03-1036 (La. App. 5 Cir. 1/27/04), 866 So.2d 995, 999-1000, writ denied, 04-0598 (La.7/2/04), 877 So.2d 144. Furthermore, LSA-R.S. 14:21 states that "[a] person who is the aggressor *273 or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict."
Defendant contends, in his appellate brief, that he killed the victim in self-defense; however, defendant presented no such evidence or theory at trial. An appellate court need not consider a claim of self-defense raised for the first time on appeal. State v. Thibodeaux, 450 So.2d 1060, 1062 (La.App. 1 Cir. 5/30/84). Although we need not consider this claim since it was raised for the first time on appeal, we determine that it is without merit.
To support his claim of self-defense on appeal, defendant points to the state's introduction of his second police statement. In this second statement, defendant claimed that he and Jermaine Hudson were involved in a verbal argument. Before it became physical, defendant left, but then returned a little while later. After defendant returned, he ran into Hudson, who started "mouthing off again." Defendant and Hudson were about to fight, but Hudson ran away. At this point, Hudson's friend, Bryan Gumms, told defendant that he was not going to fight "his boy", and then they all began fussing. Defendant left again but then came back in a car with a revolver in his pocket. Defendant and Hudson, who had also returned, started arguing again, and the defendant suggested they fight. He saw Hudson reach down, between the cars, "for a gun or something." Hudson yelled, reached down, and raised up, which scared defendant. He shot the gun in the air, causing Hudson to run. Defendant then fired a second shot into the air. Gumms asked defendant why he was shooting at his friend, and defendant told him to "get out of his face." In response, Gumms told defendant that "I'm gonna bring the heat to your ass man," which defendant thought meant that he was "gonna get his gun or whatever." According to defendant, Gumms had pulled a gun on him once before. Defendant then tried to hit Gumms with the gun, and it went off. When Gumms fell, defendant threw the gun on the ground, and left in a friend's car.
We find that nothing in this statement supports a claim of self-defense. By defendant's own admission, he left the argument, retrieved a gun, returned, started arguing with Hudson again, and then fired the gun two times in the air. This statement shows that the victim only became involved in the situation when defendant wanted to fight the victim's friend, Hudson. The victim initially told defendant that he was not going to fight with his friend. It was only after defendant shot the gun twice in the air that the victim told him that "I'm gonna bring the heat to your ass man." In his statement, defendant admitted that he guessed this meant the victim was going to get his "gun or whatever." The only evidence that the victim ever previously confronted defendant with a gun was the defendant's second statement. There was no evidence that the victim even had a gun, on his person, on the day he was shot. Defendant claims that he tried to hit the victim with the gun, and it went off. However, eyewitness Brue testified that defendant walked towards the victim, after everyone else had run away, and shot him from behind, as the victim was turning his head to look back. Further, Dr. Karen Ross, a forensic pathologist with the Jefferson Parish Sheriff's Office, testified that she performed an autopsy on the victim. Her examination revealed an entrance gunshot wound to the victim's neck on the left side beneath his *274 ear that was the cause of his death. The bullet trajectory was left to right, and slightly front to back and downward. The stippling on the victim indicated that he had been shot from one to three feet away.
From our review, we find that defendant was actually the aggressor. Therefore, he cannot now claim the right of self-defense. Moreover, defendant never attempted to withdraw from the conflict. Instead, he left, returned with his gun, and further escalated the conflict by suggesting that he and the victim's friend fight. He also twice shot into the air. Based on the evidence, we find that defendant did not act in self-defense. Defendant was not in imminent danger of losing his life or receiving great bodily harm from the victim, nor was the killing necessary under the circumstances to save himself. Accordingly, the arguments raised by defendant in this assignment are without merit.

RIGHT TO CONFRONT AND CROSS-EXAMINE WITNESSES
On appeal, defendant contends that the trial court improperly restricted his right to cross-examine state's witness Selina Brue. Defendant argues that the trial court erred in not allowing him to cross-examine Brue fully about her criminal record, even after she admitted her prior convictions and a pending charge against her. Defendant suggests that the details of Brue's convictions should have been admissible, because "the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury." LSA-C.E. art 609.1 C.[2]
A close reading of the record reveals that defense counsel did not actually attempt to question Brue about the details of her convictions, nor did he argue to the court that he wished to institute such a line of questioning. We point specifically to the following exchanges between defense counsel and Brue:
Q. Now, Ms. Brue, you testified that you had a couple of little run-ins with the law yourself, right?
A. Yes, sir.
Q. And how did they call thataggravated battery?
A. Second degree aggravated battery.
Q. Second. And would you tell the ladies and gentlemen what second degree aggravated battery is?
After this exchange, the state objected to defense counsel questioning Brue about the details of her convictions. However, the defense had not actually questioned Brue about the details of her convictions, but rather about the definition of second degree aggravated battery. The trial court sustained the state's objection, and the cross-examination of Brue continued as follows:
Q. You wouldn't dispute it, Ms. Brue, if I were to say you were a rather violent person, would you?
A. No.
Q. In fact you can be downright dangerous at times, right?
A. I used to.
Q. You used to. But not anymore?
A. Not anymore.
Q. And why not?
A. `Cause I have changed. I have a child and I'm raising my child and I don't want to be incarcerated again.

*275 Q. And would the same be true for your conviction of breaking into people's homes?
A. Breaking into people's homes?
Q. Yes. You don't do that no more either, do you?
After this exchange, the state again objected to defense counsel questioning Brue about the details of her prior convictions. However, defense counsel did not question Brue about her prior convictions. Defense counsel referred to her prior convictions and told the judge that Brue was only being questioned about her efforts to reform her life. The trial judge stated, "I'm going to allow this but there's no details that you are going to pursue on that charge." Defense counsel responded, "No." When the trial judge stated, "If you are pursuing a pattern of conduct," defense counsel interrupted and responded, "Yes." The trial judge allowed the line of questioning to continue, and defense counsel only asked the following question about Brue's efforts to reform:
Q. So it is your testimony, Ms. Brue, that you are a reformed felon. You don't go around stabbing people. You don't go around breaking in people's houses no more; is that correct?
A. I don't.
As shown by these exchanges, defense counsel did not attempt to question Brue about the details of her prior convictions. Accordingly, defendant cannot now argue on appeal that he was denied his right to cross-examine Brue about the details of her convictions.
Moreover, even if the trial court had erred in not allowing defense counsel to question Brue about her prior convictions because of its probative value, the error was harmless. See State v. Jackson, 03-883 (La.App. 5 Cir. 4/27/04), 880 So.2d 841, 853, writ denied, 04-1399 (La.11/8/04), 885 So.2d 1118. While Brue's testimony was important and not cumulative in nature, defendant's second statement, in which he admitted to killing the victim, provided the state with strong corroborating evidence of his guilt.
Accordingly, the arguments raised by defendant in this assigned error are without merit.

ERROR PATENT REVIEW
We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P.art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors patent in this case.
For the reasons set forth herein, we affirm defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Louise Walzer of the Jefferson Parish Sheriff's Office Crime Laboratory testified that the bullet was a .44 caliber Gold Dot fired from a revolver.
[2] Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense . . . when the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.