STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 KA 1229

STATE OF LOUISIANA

VERSUS

WILLIE JOE LONDON

Judgment Rendered: _____ **JUN 0 3 2024**

* * * * *

On Appeal from the
21st Judicial District Court
Parish of Tangipahoa, State of Louisiana
Trial Court No. 2102047

The Honorable Brenda B. Ricks, Judge Presiding

* * * * *

| | |
|---|---|
| Scott M. Perrilloux<br>District Attorney<br>Jeanne Rougeau<br>Assistant District Attorney<br>Livingston, Louisiana | Attorneys for Appellee,<br>State of Louisiana |
| | |
| J. Garrison Jordan<br>William N. Macaluso<br>Hammond, Louisiana | Attorneys for Defendant-Appellant,<br>Willie Joe London |

* * * * *

BEFORE: WELCH, WOLFE, AND STROMBERG, JJ.

**WOLFE, J.**

The defendant, Willie Joe London, was charged by bill of information with one count of attempted second degree murder, a violation of La. R.S. 14:27 and La. R.S. 14:30.1; one count of illegal use of weapons or dangerous instrumentalities, a violation of La. R.S. 14:94(A); and one count of aggravated criminal damage to property, a violation of La. R.S. 14:55. He entered a plea of not guilty and, following a trial by jury, was found guilty as charged of attempted second degree murder and illegal use of weapons or dangerous instrumentalities, and not guilty of aggravated criminal damage to property. The trial court denied the defendant's motion for partial judgment of acquittal and sentenced him to fifty years at hard labor without benefit of probation, parole, or suspension of sentence for attempted second degree murder, and two years at hard labor for illegal use of weapons or dangerous instrumentalities, to be served concurrently. The defendant now appeals, assigning error to the sufficiency of the evidence against him and the excessiveness of his sentence. For the following reasons we affirm the defendant's convictions, vacate his sentences, and remand to the trial court for further proceedings.

## FACTS

On August 5, 2021, officers with the Tangipahoa Parish Sheriff's Office were dispatched to 62264 Garrick Lane after receiving multiple 911 calls that a woman, later identified as Roneca London, had been shot. London suffered a non-fatal gunshot wound to her chest, and officers were informed the shooter was London's uncle, the defendant, whom they later located in the woods behind his residence and placed under arrest.

## SUFFICIENCY OF THE EVIDENCE

In his first assignment of error, the defendant contends the State failed to prove he committed attempted second degree murder. Specifically, the defendant alleges the State failed to prove he possessed the specific intent to kill London because he

2

was intoxicated and acting in self-defense, and failed to prove the bullet that struck London was fired from his weapon.[1]

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV, § 1; La. Const. art. I, § 2. The standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of the crime beyond a reasonable doubt. See La. Code Crim. P. art. 821(B); **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); **State v. Currie**, 2020-0467 (La. App. 1st Cir. 2/22/21), 321 So.3d 978, 982.

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt the defendant was guilty of every essential element of the crime. **Currie**, 321 So.3d at 982. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. **State v. Dyson**, 2016-1571 (La. App. 1st Cir. 6/2/17), 222 So.3d 220, 228, writ denied, 2017-1399 (La. 6/15/18), 257 So.3d 685.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific

---

[1] We note the defendant did not allege self-defense at trial and the jury was not instructed on the defense of justification, nor did the defendant request such instruction or object to the lack of instruction. Accordingly, the defendant is barred from raising this defense for the first time on appeal. La. Code Crim. P. art. 841; see also **State v. Jackson**, 2006-565 (La. App. 5th Cir. 12/27/06), 948 So.2d 269, 273.

intent is that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); **Currie**, 321 So.3d at 982-983. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended. La. R.S. 14:27(A).

Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. **Currie**, 321 So.3d at 983. To sustain a conviction for attempted second degree murder, the State must prove the defendant: (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim's death. La. R.S. 14:27; 14:30.1. Although the statute for the completed crime of second degree murder allows for a conviction based on specific intent to kill *or* to inflict great bodily harm, attempted second degree murder requires specific intent to kill. **State v. Bishop**, 2001-2548 (La. 1/14/03), 835 So.2d 434, 437.

The State bears the burden of proving the elements of the offense, along with the burden of proving the identity of the defendant as the perpetrator. When the issue of identity is raised, the State is required to negate any reasonable probability of misidentification. A positive identification by only one witness is sufficient to support a conviction. **State v. Coleman**, 2017-1045 (La. App. 1st Cir. 4/13/18), 249 So.3d 872, 877-878, writ denied, 2018-0830 (La. 2/18/19), 263 So.3d 1155.

Voluntary intoxication is a defense to a prosecution only if the circumstances indicate the intoxication precludes the presence of specific criminal intent. See La. R.S. 14:15(2). The defendant has the burden of proving his intoxication defense.

4

Thereafter, the State must negate that defense by proving beyond a reasonable doubt that specific intent was present despite the defendant's alleged intoxication. The question of whether the defendant's intoxication precluded him from forming specific intent is a question to be resolved by the jury. **State v. Melerine**, 2022-0553 (La. App. 1st Cir. 12/22/22), 2022 WL 17851636, *3 (unpublished), <u>writ denied</u>, 2023-00161 (La. 10/17/23), 371 So.3d 1079.

At trial, London testified that on the day of the incident, she and the defendant got into a fight wherein the defendant broke a window in her trailer. In response, London walked next door to the defendant's house and hit him and his vehicle with a bat. Although London testified at trial that she did not know who shot her because her back was turned when the bullet struck her, London gave several statements prior to trial confirming her uncle was the shooter. In a statement given at the hospital on the day of the shooting, London told officers her uncle, the defendant, was mad at her because she took his car keys to prevent him from driving while he was intoxicated. According to London, the defendant then came to her house and broke her bedroom window while she and her young children were inside. She then went outside and, armed with a baseball bat, began to hit him and his vehicle. She stated she began running when the defendant went inside to get his gun, an AR-15 rifle. He then fired multiple shots and said he was going to kill her, at which point she was struck in the chest and lower back.

London gave a similar statement on September 17, 2021, in which she again stated that the defendant shot her with an AR-15 rifle after she hit him and his vehicle with a bat in response to him breaking her bedroom window. However, at trial she told the jury she did not remember giving the statement at the hospital, she was angry and under the influence of pain medication during both statements, and reiterated she did not see who shot her. London also signed an affidavit stating she did not see who

shot her and did not wish to pursue charges against the defendant, which was introduced at trial.

Detective Henry Dejean with the Tangipahoa Parish Sheriff's Office testified that when he arrived on the scene at 62264 Garrick Lane, he was informed by family members that London was shot by her uncle, the defendant. The defendant was not in custody at that point, and his whereabouts were unknown. Detective Dejean began searching the woods behind the defendant's residence, where the defendant was later located and arrested. Although no weapon was ever recovered, Detective Dejean testified he received information from witnesses that an AR-15 style rifle was used, which was consistent with the evidence recovered at the scene, including nine rounds of .223 Remington spent cartridges located near the defendant's vehicle, and two 40-round magazines located inside the defendant's home. Detective Dejean testified the 40-round magazines would insert into an AR-15 style rifle, and while one magazine was empty, the other magazine held approximately thirty-five hollow-point rounds of .223 Remington ammunition. Detective Dejean further testified the pattern of shell casings found near the defendant's vehicle indicated that the shooter was constantly moving and shooting while tracking his target, rather than standing still and shooting at a fixed target. Finally, Detective Dejean testified to medical records that indicated London suffered an entry and exit gunshot wound to her chest and an abrasion to her lower back.

London's daughter, T.L., gave a statement in this matter, which was played for the jury.[2] T.L. was twelve-years-old at the time of the interview, and stated that on the day of the incident, the defendant, her uncle Willie, was drunk and broke a window in their home. Her mother then grabbed a bat and hit the defendant and his car, and the

_____

[2] In the interest of protecting the identity of the juvenile involved in this matter, we refer to the juvenile by her initials. See La. Ch. Code art. 412; La. R.S. 46:1844(W); Uniform Rules of Louisiana Courts of Appeal, Rule 5-2.

defendant then went into his house and grabbed a gun. T.L. stated the defendant started shooting, and bullets hit her mother as she was running away.

The defendant testified at trial, during which he confirmed that on August 5, 2021, he had been drinking and broke a window on London's trailer because he was upset that she refused to give him the keys to his vehicle. The defendant further testified that London then came to his house and struck him and his vehicle with a baseball bat. The defendant stated he then went into his house, retrieved his gun, and fired multiple shots. The defendant denied he intended to shoot London, stating that he was drunk and angry, and intended only to shoot at a nearby shed in an attempt to get London out of his yard. The defendant confirmed that while firing he emptied the rifle's magazine, shooting nine times. He testified that he then threw the gun away, but later testified he put the gun back inside his house, after which the gun was stolen.

The jury can accept or reject the testimony of any witness. To resolve conflicting testimony relative to factual matters, the jury must make credibility determinations and weigh the evidence. The **Jackson** standard of review does not permit a reviewing court to substitute its own appreciation of the evidence for the factfinder's, assess the credibility of witnesses, or reweigh evidence. **State v. Woods**, 2022-0520 (La. App. 1st Cir. 12/22/22), 2022 WL 17845490, *6 (unpublished), writ denied, 2023-00083 (La. 10/3/23), 370 So.3d 1077.

After a thorough review of the record, it is clear the State satisfied its burden of proving the defendant had the specific intent to kill London, and committed an act tending directly toward the accomplishment of London's death, such that he was guilty of attempted second degree murder. At the outset, we note specific intent to kill may be inferred from a defendant's act of pointing a gun and firing it at a person. **State v. Welch**, 2019-0826 (La. App. 1st Cir. 2/21/20), 297 So.3d 23, 27, writ denied, 2020-00554 (La. 9/29/20), 301 So.3d 1193. Here, the defendant testified that while London was running away, he fired nine bullets from his AR-15 rifle in the direction of his

shed, emptying his clip. Detective Dejean testified that based on the pattern of spent shell casings found at the scene, the shooter must have been constantly moving and tracking his target while he was shooting. In finding the defendant guilty, it is clear the jury rejected his argument that he fired his gun at a nearby shed in an attempt to get London away from him. Rather, a jury could have reasonably concluded that the defendant possessed the specific intent to kill London when he emptied the magazine of his AR-15 rifle in her direction while she ran away.

While the defendant argues on appeal the uncontroverted evidence introduced at trial established he was intoxicated such that specific intent was vitiated, we disagree. Although London, her daughter T.L., and the defendant all testified the defendant was intoxicated when the incident occurred, the jury rationally rejected the defendant's theory that his intoxication rose to the level of negating his specific intent to kill London. Detective Dejean testified the pattern of the empty shell casings indicated the defendant was constantly moving and tracking London while emptying his clip. Moreover, after the shooting occurred, the defendant fled into the woods behind his home and discarded the weapon, both of which indicate he had the presence of mind immediately following the shooting to attempt to avoid apprehension and dispose of incriminating evidence. Accordingly, the record does not support a finding the defendant was intoxicated to the extent that he was precluded from forming the requisite specific intent.

As to the defendant's argument on appeal that the State failed to prove a projectile from his gun struck London, this argument is likewise weakened by the defendant's own admission at trial that he was the shooter. Moreover, neither London nor the defendant, nor any other witness, identified another individual with a gun in the area when London was shot. Instead, the defendant himself testified that he was shooting towards the shed in an attempt to scare London away from him, and the bullet hit her as she was running behind the shed. Finally, we note that while no projectile

was recovered from London because she suffered both an entry and exit wound to the chest, and while no gun was located because the defendant admitted to throwing it away, Detective Dejean testified the empty magazine found in the defendant's home was consistent with the spent shell casings located in the defendant's yard. Accordingly, a jury could have rationally concluded the defendant fired the bullet that struck London in the chest.

In reviewing the evidence in the light most favorable to the prosecution, we cannot say the jury's determination the defendant was guilty of attempted second degree murder was irrational under the facts and circumstances presented to them. **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (*per curiam*). This assignment of error is without merit.

## EXCESSIVE SENTENCE

In his second assignment of error, the defendant alleges his sentence of fifty years at hard labor for the attempted second degree murder of London was unconstitutionally excessive.

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. A sentence within statutory limits may still be considered excessive if it is grossly disproportionate to the seriousness of the offense, or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, the sentence shocks the sense of justice. **State v.**

**Anderson**, 2022-0587 (La. App. 1st Cir. 12/22/22), 357 So.3d 845, 852, <u>writ denied</u>, 2023-00352 (La. 9/6/23), 369 So.3d 1267.

The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of an abuse of discretion. Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing a sentence. While the entire checklist of La. Code Crim. P. art. 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. **Anderson**, 357 So.3d at 852.

The articulation of the factual basis for a sentence is the goal of La. Code Crim. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Article 894.1. The trial judge should review the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. On appellate review, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. **Anderson**, 357 So.3d at 852.

For the offense of attempted second degree murder, the trial court sentenced the defendant to the statutory maximum of fifty years at hard labor, without benefit of probation, parole, or suspension of sentence. The defendant then objected to the trial court's imposition of the maximum sentence, noting his "relatively minor prior criminal record." As a general rule, maximum or near maximum sentences are to be reserved for the worst of the worst offenders and the worst offenses. **State v. James**, 2002-2079 (La. App. 1st Cir. 5/9/03), 849 So.2d 574, 586. Maximum sentences may also be imposed when the offender poses an unusual risk to public safety due to his past conduct of repeated criminality. **State v. Nicholas**, 2011-0641 (La. App. 1st

Cir. 11/9/11), 2011 WL 5429572, *2 (unpublished), writ denied, 2011-2702 (La. 4/9/12), 85 So.3d 694.

On appeal, the defendant contends the trial court failed to articulate a statutory basis under La. Code Crim. P. art. 894.1 for its imposition of the statutory maximum sentence for attempted second degree murder. However, we find a thorough review of the record supports the sentence imposed. Prior to imposing the sentences, the trial court presided over the trial in this matter. The trial court heard testimony that while London was running away from him, the defendant unloaded the magazine of an AR-15 rifle in her direction, and reviewed medical reports which stated "London presented . . . with a gunshot wound to her chest, which very fortunately resulted primarily in extrathoracic injuries[.]" The trial court also listened to the panicked 911 calls made by children and neighbors reporting that London was shot in the chest, and heard the statement of T.L., who discussed how her uncle shot her mother, and how he had shot at other members of her family in the past. Finally, the trial court heard the defendant's testimony wherein he took no accountability and showed no remorse for shooting, and very nearly killing, his niece.

Considering the senseless nature of the shooting in this case, for which the record shows no expression of remorse by the defendant, we find no abuse of discretion in the imposition of the maximum sentence. The defendant's actions involve the most serious offenses and demonstrate a blatant disregard for the safety of others, as well as the rule of law. Moreover, we find the sentence imposed is supported by an adequate factual basis, and a lesser sentence would deprecate the seriousness of the defendant's crime. See La. Code Crim. P. art. 894.1(A)(2), (A)(3), (B)(1), (B)(6), (B)(10), and (B)(21). The sentence is not grossly disproportionate to the severity of the offense or shocking to the sense of conscience and, thus, is not constitutionally excessive. See **State v. Williams**, 2022-0501 (La. App. 1st Cir. 11/4/22), 2022 WL 16706610, *4 (unpublished), writ denied, 2022-01684 (La.

2/7/23), 354 So.3d 673; **State v. Glenn**, 2021-1347 (La. App. 1st Cir. 4/8/22), 2022 WL 1055589, *8 (unpublished). This assignment of error is without merit.

PATENT ERROR

This court conducts an independent review of the entire record, including a review for error under La. Code Crim. P. art. 920(2). Our review has revealed the existence of a patent sentencing error in this case.

Louisiana Code of Criminal Procedure article 873 mandates a sentence shall not be imposed until at least twenty-four hours after a motion for new trial or in arrest of judgment is overruled, unless the defendant expressly waives the required delay or pleads guilty. Although Article 873 does not explicitly mandate that a sentence shall not be imposed until at least twenty-four hours after a motion for post-verdict judgment of acquittal is overruled, this court has previously applied the twenty-four-hour delay required by Article 873 to motions for a post-verdict judgment of acquittal. **State v. Sullivan**, 2022-0561 (La. App. 1st Cir. 11/17/22), 356 So.3d 1075, 1078. Where a defendant does not expressly waive the delay required by Article 873 and challenges the sentence on appeal, the sentence must be vacated and the matter must be remanded so a sentence can be legally imposed. **Id.** Nevertheless, the Louisiana Supreme Court has indicated in the absence of prejudice to the defendant, such as when the sentence is mandatory, reversal of the sentence is not warranted. See **State v. Seals**, 95-0305 (La. 11/25/96), 684 So.2d 368, 380, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997).

In the instant matter, the trial court denied the defendant's motion for post-verdict judgment of acquittal during the same hearing at which the defendant was sentenced. Consequently, the trial court failed to observe the required twenty-four-hour delay between denying the defendant's motion for post-verdict judgment of acquittal and imposing the defendant's sentences. Moreover, the record reflects the defendant did not expressly waive the delay, the sentences imposed were not

12

mandatory, and the defendant has challenged his sentence on appeal. Accordingly, we are required to vacate the sentences imposed and remand this matter for resentencing. See **Sullivan**, 356 So.3d at 1078.

**CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED WITH INSTRUCTIONS.**